WACHOVIA REALTY INVESTMENTS, BUCK NICKEL, ROBERT H. PEASE, CHARLES G. REAVIS, JR., ROBERT E. SMITH, EVERETT C. SPELMAN, SR., EDWARD H. WARNER, CALDER W. WOMBLE AND BLAND W. WORLEY, TRUSTEES V. HOUSING, INC., C. P. ROBINSON, JR., AND BETTY LYNN WILSON ROBINSON V. C. P. ROBINSON, JR.

No. 60

(Filed 7 March 1977)

1. Bills and Notes § 20— action on note — summary judgment — retention of claim for set-off

The superior court erred in rendering summary judgment for plaintiff for the alleged unpaid balance due upon a note while retaining for hearing and determination defendant's claim that it is entitled to a set-off or credit in approximately the same amount, since if there remains a substantial controversy as to the right of defendant to such credit, there also remains such controversy as to the amount plaintiff is entitled to recover from defendant; however, the existence of this material fact would not have precluded the superior court from rendering summary judgment determining that defendant was liable to plaintiff for whatever amount remained due and owing upon the note after all proper credits had been allowed if there was no material issue of fact concerning the matters defendant alleged as bases for its claim that plaintiff released it from all liability and if such uncontroverted facts were insufficient to establish the alleged release.

2. Appeal and Error § 6; Execution § 6— money judgment — substantial right of debtor — procedures for staying execution

The existence of procedures under G.S. 1-269 and G.S. 1-289 for staying execution upon a money judgment does not prevent the entry of the judgment from affecting a substantial right of the judgment debtor since the procedures, even if successful, require the judgment debtor to incur substantial expense.

3. Appeal and Error § 6— order affecting substantial right — appeal

While the court's order rendering summary judgment for plaintiff for the alleged unpaid balance of a note and retaining for hearing and determination defendant's claim that it was entitled to a set-off or credit was not a final judgment by virtue of G.S. 1A-1, Rule 54, the judgment affected a substantial right of defendant and was appealable by virtue of G.S. 1-277 and G.S. 7A-27 (d) where execution was entered to enforce the judgment, and supplemental proceedings in execution were instituted and an order was entered by the clerk declaring the judgment a lien upon funds allegedly owed to defendant.

4. Contracts § 19— novation — insufficient showing

The record did not support corporate defendant's contention that it was released from liability on its note to plaintiff by a novation

which substituted its shareholder as principal debtor where the facts not in dispute, including the agreement between defendant's two shareholders relied on by defendant to establish its alleged release by plaintiff, show neither an assumption by one shareholder of defendant's liability on the note to plaintiff nor plaintiff's intent to accept any promise by the shareholder in lieu of the promise by defendant.

5. **Bills and Notes § 14— assumption of note — extension of time for payment — provision prohibiting release of original debtor**

Even if an agreement between corporate defendant's two shareholders constituted an assumption of defendant's note to plaintiff by one shareholder and a conversion of defendant's liability from that of principal debtor to that of surety, a provision in the note that all parties to the note agree to remain bound until the principal and interest are paid in full notwithstanding any extensions of time for payment would prevent an extension of time granted to the shareholder from releasing defendant from its obligation as surety.

6. **Mortgages and Deeds of Trust § 9— release of part of land from lien — no release of debtor**

Defendant was not released from liability on its note to plaintiff under G.S. 45-45.1(2) or (4) because of plaintiff's release of a portion of the secured property from the lien of the deed of trust upon its sale to a municipal housing authority after an agreement between defendant's two stockholders that one stockholder would complete a housing project on the secured property without cost to defendant, since the statutes contemplate a sale of unencumbered real estate to a "grantee" thereof, and there was no sale and conveyance of the property to the stockholder who completed the housing project; nor was defendant released from liability on the note by the fact that defendant was not credited on its note with the entire amount of the sales price of the released property, but that some $450,000 "went" to the stockholder who completed the housing project, where the stockholder had been given the power of attorney to act for defendant, the sale of the released property and collection and disbursement of the proceeds thereof were made by the stockholder as attorney in fact for defendant, and nothing in the record indicates that the stockholder exceeded his authority or that the $450,000 which "went" to him was applied or used otherwise than in accord with the knowledge of and the authority given by defendant.

7. **Mortgages and Deeds of Trust § 32— foreclosure sale — purchase by secured creditor — profit from resale — evidence of fair value**

When the holder of a note secured by a deed of trust purchases the secured property at a foreclosure sale conducted pursuant to a power of sale contained in the deed of trust, neither G.S. 45-21.36 nor any principle of law entitles the debtor to have credited upon the note whatever profit such purchaser may realize upon a subsequent sale of the property; however, the statute entitles the debtor to credit for the fair value of the property at the time of the sale, and such subsequent sale would be a circumstance indicating the fair value of the property at the time of the foreclosure, the weight to be given it de-

Investments v. Housing, Inc.

pending upon other circumstances such as the lapse of time between the foreclosure and the subsequent sale and the known probability, at the time of the foreclosure sale, that such subsequent sale could be made.

8. **Mortgages and Deeds of Trust § 32— foreclosure sale — purchase by secured creditor — resale for higher price — determination of fair value**

In an action to recover the balance due on a note to plaintiff secured by a deed of trust on land being developed as a housing project after the secured property was purchased by plaintiff at a foreclosure sale conducted pursuant to the power of sale contained in the deed of trust, a genuine issue of material fact was presented as to the amount, if any, which should be credited upon the note by reason of plaintiff's purchase of the property at the foreclosure sale for less than its fair value where there was undisputed evidence that the trustee conveyed the property to plaintiff's nominee on 14 November 1972, and plaintiff's nominee conveyed the property on 29 November 1972 to a municipal housing authority for an amount substantially in excess of the bid placed by plaintiff at the foreclosure sale, and there was evidence tending to show that at the time of the foreclosure plaintiff knew that it could probably dispose of the property upon completion of the housing project in accordance with a contract defendant had with the housing authority for sale of the property upon completion.

ON *certiorari* to the Court of Appeals to review its decision, reported in 28 N.C. App. 385, 221 S.E. 2d 381, dismissing the appeal of Housing, Inc., from *Walker, J.*, at the 16 June 1975 Session of FORSYTH. This case was docketed and argued as No. 13 at the Fall Term 1976.

Wachovia Realty Investments, an unincorporated business trust organized under the laws of South Carolina, brought this action against Housing, Inc., C. P. Robinson, Jr., and his wife, Betty Lynn Wilson Robinson, to recover $203,794.24, plus interest, alleged to be the balance due and owing upon a note made to it by Housing, Inc., payment of which was guaranteed by the two individual defendants. The complaint alleges that the note was secured by a deed of trust upon real estate owned by Housing, Inc., which deed of trust was foreclosed, and that the proceeds of the foreclosure sale were applied to the then unpaid balance of the note, leaving still due and owing to the plaintiff the sum prayed for.

Housing, Inc., filed its answer to the complaint and its third party complaint against C. P. Robinson, Jr., alleging, as to him, that he contracted to indemnify Housing, Inc., and, as a result thereof, in the event that Housing, Inc., is liable to the

plaintiff by reason of the things alleged in the complaint, Housing, Inc., is entitled to indemnification from C. P. Robinson, Jr.

As to the complaint against it, Housing, Inc., admitted its execution of the note and deed of trust given to secure the same and the foreclosure of the deed of trust, but it alleged that, through a novation, it was released by the plaintiff from all obligation upon the note. For further defenses Housing, Inc., alleged that: (1) By reason of certain alleged incidents in the conduct of the foreclosure sale and subsequent transfers of the property to and by the nominee of the plaintiff, Housing, Inc., was entitled to a further credit of $207,225 over and above the amount credited to the note as the purported proceeds of the foreclosure sale; (2) the plaintiff consented to an alleged contract between C. P. Robinson, Jr., and his former business associate and, thereby, released Housing, Inc., from its obligation upon the note and, if Housing, Inc., was not thereby released by the plaintiff, its obligation upon the note was converted to that of a surety for C. P. Robinson, Jr., who became primarily liable; (3) the plaintiff by granting extensions of time to C. P. Robinson, Jr., without the consent of Housing, Inc., released Housing, Inc., from its said obligation as surety; (4) other actions of the plaintiff released Housing, Inc., from its obligation as surety for C. P. Robinson, Jr., and (5) the note was given for a loan for the purpose of purchasing and developing real property, which the plaintiff at all times knew, and, by reason of G.S. 45-21.38, the plaintiff is not entitled to recover a deficiency judgment upon the note.

Following the filing and answering of a long series of interrogatories and requests for admissions, both the plaintiff and Housing, Inc., moved for summary judgment, alleging there is no genuine issue of fact presented. In the alternative, the plaintiff moved that, if its motion for summary judgment should be denied, the court ascertain what material facts are in actual controversy and enter its order directing such further proceedings as might be deemed just. Housing, Inc., also prayed that, if its motion for summary judgment be denied, it be granted partial summary judgment by virtue of its alleged entitlement to a set-off by reason of the manner in which the foreclosure of the deed of trust was conducted and the sale thereat of the property to the nominee of the plaintiff for less than its true value. Both motions for summary judgment were supported by affidavits and briefs filed with the Superior Court.

The Superior Court denied the motion of Housing, Inc., for summary judgment and allowed the motion of the plaintiff therefor, stating in its judgment:

"[T]he Court having considered the matters submitted to it * * * and having found that there is no genuine issue as to any material fact to be submitted to the trial court with respect to the liability of the defendants to the plaintiffs, *save and except the question of setoff,* and that the plaintiffs should be granted a Judgment against the defendants on the issue of the liability of the defendants to the plaintiffs, and that the matter should be retained for trial on the issue of setoff and upon the issues raised by the defendant Housing, Inc. alleging right to indemnification by the defendant, C. P. Robinson, Jr., but that the plaintiffs are entitled to a Judgment as a matter of law for the deficiency amount due on the note held by the plaintiffs; (Emphasis added.)

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DE-CREED that the Motion of the plaintiffs for summary judgment is granted and that the plaintiffs shall have and recover of the defendants the sum of $204,603.55, together with interest thereon from the date of this Judgment, and it is

"FURTHER ORDERED, ADJUDGED AND DECREED that this cause shall be retained upon the docket of this Court for determination of what amount, if any, are the defendants entitled to as a setoff pursuant to Section 45-21.36 of the North Carolina General Statutes and for determination as to the rights, if any, of the defendant Housing, Inc. to indemnification by the defendant C. P. Robinson, Jr."

By stipulation of the parties in the record, it appears that C. P. Robinson, Jr., and Betty Lynn Robinson, his wife, filed answer to the plaintiff's complaint, that the plaintiff moved for summary judgment against them and such judgment was entered against them from which neither of these defendants appealed.

Following the entry of the judgment, an execution was issued thereon commanding the Sheriff to satisfy the judgment in favor of the plaintiff for the principal sum of $204,603.55. The Sheriff returned the execution with a notation that no

property was found in his county to satisfy the same. Thereupon, upon the plaintiff's petition, supplemental proceedings in execution were initiated against Housing, Inc. Therein, Housing, Inc., was ordered to appear, through an appropriate officer or other representative, before the Clerk to answer under oath all proper questions concerning matters set forth in the petition of the plaintiff and was forbidden to make any transfer of certain amounts alleged by the plaintiff to be receivable by it from the Housing Authority of the City of Winston-Salem, and a lien was imposed by the order of the Clerk upon all such funds in favor of the plaintiff for the satisfaction of the judgment.

Subsequently, the examination of the officer or other representative of Housing, Inc., was continued until further notice. Upon appeal by Housing, Inc., to the Court of Appeals, that court dismissed the appeal on the ground that the judgment of the Superior Court "was no final judgment" as provided in G.S. 1A-1, Rule 54(b), and is not appealable. The Court of Appeals was of the opinion that although, pursuant to Rule 54(b) it may have "limited power to allow appellate review of a Rule 54 interlocutory order" by certiorari, such authority "should be exercised sparingly in extraordinary circumstances to avoid a harsh result" and should not be exercised under the circumstances of this case. The Court of Appeals noted that Housing, Inc., had filed in the Court of Appeals a petition for stay of execution which was denied because of Housing, Inc.'s failure to comply with Rule 23 of the Rules of Appellate Procedure. The Court of Appeals also said: "The defendant, Housing, could have moved for stay of execution in the trial court under Rule 62(g), or, in the alternative, on the ground that execution was improvidently issued because the judgment was interlocutory and not final and the defendant may now move in the trial court for withdrawal of the execution issued on an interlocutory judgment."

*Womble, Carlyle, Sandridge & Rice, by W. P. Sandridge, Jr., for Plaintiff.*

*Smith, Moore, Smith, Schell & Hunter by Jack W. Floyd and O. Max Gardner III for Defendant.*

LAKE, Justice.

[1] The Superior Court was clearly in error in rendering summary judgment for a specified amount, the alleged unpaid

balance due upon the note, while retaining for hearing and determination the claim of Housing, Inc., that it is entitled to a set-off or credit in approximately the same amount. If, as the Superior Court found, there remains a substantial controversy to be determined as to the right of Housing, Inc., to such credit, it is obvious that there remains such controversy as to the amount the plaintiff is entitled to recover from Housing, Inc. This being true, summary judgment for the amount so in controversy could not properly be entered. *Zimmerman v. Hogg & Allen,* 286 N.C. 24, 209 S.E. 2d 795 (1974) ; *Kessing v. Mortgage Corp.,* 278 N.C. 523, 180 S.E. 2d 823 (1971).

The existence of this material of fact would, of course, not preclude the Superior Court from rendering summary judgment determining that Housing, Inc., is liable to the plaintiff for whatever amount may remain due and owing upon the note after all proper credits have been allowed, if there is no material issue of fact concerning the matters which Housing, Inc., has alleged as bases for its claim that the plaintiff released it from all liability and if such uncontroverted facts are insufficient to establish the alleged release.

[2]   It is equally clear that the entry of the judgment that the plaintiff have and recover of Housing, Inc., $204,603.55 affects a substantial right of Housing, Inc. Execution has been entered to enforce this judgment. Supplemental proceedings in execution have been instituted and an order has been entered by the Clerk of the Superior Court declaring the judgment a lien upon funds alleged to be owing to Housing, Inc., from the Housing Authority of the City of Winston-Salem. As the Court of Appeals observed in its opinion, G.S. 1-269 and G.S. 1-289 provide for a stay of execution upon a money judgment, provided the judgment debtor gives a bond or makes a deposit, and G.S. 1A-1, Rule 62(g), authorizes the court which rendered the judgment to stay its enforcement, pending its determination of other aspects of the litigation, upon such conditions as that court deems necessary to secure the benefit of the judgment to the judgment creditor. Either of those procedures would, however, even if successful, require Housing, Inc., to incur substantial expense. Thus, the existence of those procedures for staying execution on the judgment does not prevent the entry of the judgment from affecting a substantial right of the judgment debtor.

G.S. 1-277(a) provides:

"An appeal may be taken from every judicial order or determination of a judge of a superior or district court, upon or involving a matter of law or legal inference, whether made in or out of session, which affects a substantial right claimed in any action or proceeding * * * ."

G.S. 7A-27(d) provides:

"From any interlocutory order or judgment of a superior court or district court in a civil action or proceeding which affects a substantial right * * * appeal lies of right directly to the Court of Appeals."

These statutes were not repealed or nullified by the enactment of Chapter 1A of the General Statutes prescribing the presently effective Rules of Civil Procedure. In *Highway Commission v. Nuckles,* 271 N.C. 1, 13, 155 S.E. 2d 772 (1967), this Court, speaking through Justice Sharp, now Chief Justice, said: "Ordinarily, an appeal lies only from a final judgment, but an interlocutory order which will work injury if not corrected before final judgment is appealable." In *Stanback v. Stanback,* 287 N.C. 448, 453, 215 S.E. 2d 30 (1975), speaking through Justice Huskins, we said: "Ordinarily, an appeal from an interlocutory order will be dismissed as fragmentary and premature unless the order affects some substantial right and will work injury to appellant if not corrected before appeal from final judgment." See also: *Currin v. Smith,* 270 N.C. 108, 153 S.E. 2d 821 (1967); *Steele v. Hauling Co.,* 260 N.C. 486, 133 S.E. 2d 197 (1963).

[3] By virtue of G.S. 1A-1, Rule 54, the judgment rendered by the Superior Court was not a final judgment, but by virtue of G.S. 1-277 and G.S. 7A-27(d) it is, nevertheless, appealable and the Court of Appeals was in error in dismissing the appeal of Housing, Inc., without passing upon the merits thereof. In its brief in this Court, the plaintiff-appellee agrees that the judgment of the Superior Court is appealable and requests this Court to consider the appeal on its merits and affirm the judgment of the Superior Court, or, if not, to provide guidance to the trial court, and to the parties, as to what genuine issues of material fact requires disposition by the Superior Court.

[4] We turn now to the contention of Housing, Inc., that it has been released from all liability upon the note and, therefore,

the Superior Court was in error in granting the motion of the plaintiff for summary judgment in any amount and in denying the motion of Housing, Inc., for summary judgment.

The first alleged basis for this contention is that Robinson and Johnson, the only stockholders of Housing, Inc., entered into an agreement on 23 February 1971 for a separation of their numerous business interests, to which agreement the plaintiff consented and by which Robinson assumed the duty to pay the construction loan evidenced by the note here in suit. Housing, Inc., asserts that this agreement constituted "a novation in substituting C. P. Robinson Construction Company in the place of Housing, Inc., thereby releasing Housing, Inc., from its obligations under the construction loan documents."

The following facts with reference to this matter are not in dispute:

1. On 6 May 1970, Housing, Inc., executed the note in suit for the principal sum of $3,624,220, secured by a deed of trust upon certain real estate known as North Hills in Winston-Salem, which land Housing, Inc., then owned and proposed to develop as a housing project for sale, in Phases I to VIII as completed, to the Housing Authority of Winston-Salem.

2. At the time the note was made, Robinson and Johnson were the only shareholders of Housing, Inc., each owning one-half of the outstanding capital stock, and they were jointly interested in a number of other business interests and development projects.

3. Contemporaneously with the execution of the note, Robinson, Johnson and their wives executed to the plaintiff, jointly and severally, an unconditional guaranty of payment of the note, the guarantors agreeing therein to remain bound, notwithstanding indulgences or extensions of time granted to the borrower and notwithstanding the surrender of any security held for the payment of the debt.

4. Substantially contemporaneously with the execution of the note, Housing, Inc., entered into a contract with C. P. Robinson Construction Company, of which Robinson was the sole shareholder, for the construction by that company of the North Hills project.

5. The agreement of 23 February 1971 between Robinson and Johnson provided in the portions thereof pertinent to this controversy:

"WHEREAS, it appears that the debts of Housing, Inc., *(not including certain mortgage obligations* and an obligation on North Hills of $21,680.00) amount to $516,071.94, a schedule of which prepared by the accountant is attached hereto.

"NOW, THEREFORE, it is agreed *between the parties* as follows:

"(2) That Robinson *shall complete the project* known as North Hills in Winston-Salem, North Carolina, *without expense to Housing, Inc.* and shall receive *as consideration therefor* all sales proceeds arising therefrom *after discharging the existing construction loan* and all bills unpaid in connection with the project.

\*    \*    \*

"(5) As a condition to the transfer of the foregoing assets [properties not relating to this litigation], Robinson shall assume and pay obligations now owed by Housing, Inc. the aggregate amount of which shall be one-half of the amount arrived at by subtracting from total *non-mortgage* liabilities of $516,071.94 the following four items [items not related to this litigation.]

\*    \*    \*

"The obligations assumed by Robinson under the terms of this paragraph shall include the note in favor of Commercial and Farmers Bank at Rural Hall, North Carolina. The balance of the funds payable under the provisions of this Paragraph 5 shall be paid by assuming other obligations designated by the accountant." (Emphasis added.)

6. At all times legal title to the North Hills properties remained in Housing, Inc., except that Phases I through V were conveyed, when completed, to the Housing Authority of the City of Winston-Salem by deeds from Housing, Inc. (and were then released from the deed of trust by the plaintiff), and the rest of the properties were conveyed by the trustee in the deed of trust to the purchaser at a foreclosure sale conducted by him in 1972.

It is obvious, upon the face of the agreement of 23 February 1971 between Robinson and Johnson, that it did not constitute an assumption by Robinson of liability for the payment of the note in suit. With reference to the North Hills project, Robinson simply contracted to complete the project without further expense to Housing, Inc. This is a far cry from an assumption by him of personal liablity for the payment of the note for $3,624,220, previously guaranteed by him, and a release by Robinson of Housing, Inc., from the latter's obligation to indemnify him in event he was required, under his guaranty, to pay the note. Robinson's undertaking to complete the project, at most, merely released Housing, Inc., from its obligation under its construction contract with C. P. Robinson Construction Company, with which contract the plaintiff had no connection. In consideration for this, the Robinson-Johnson agreement provided that Robinson would be entitled to all proceeds of sales of the North Hills properties "after discharging the existing construction loan" and other bills. That is, the agreement provided that the proceeds of such sales by Housing, Inc., would be applied first to the payment of those obligations of Housing, Inc., and Robinson's compensation for completing the contract would be contingent upon there being some surplus of such proceeds over such obligations. This is a far cry from a conveyance of the North Hills properties to Robinson by Housing, Inc.

The only obligations of Housing, Inc., which this Robinson-Johnson agreement declared that Robinson assumed were certain "nonmortgage liabilities" owed by Housing, Inc., less certain specified credits not related to the North Hills project.

Thus, the facts not in dispute, including the precise agreement relied upon by Housing, Inc., to establish its alleged release by the plaintiff, show no assumption of the note by Robinson and no conveyance by Housing, Inc., of the properties to him.

It is also undisputed that, substantially contemporaneously with the Robinson-Johnson agreement, Housing, Inc., executed its power of attorney to Robinson giving him the authority "to do all things necessary on behalf of Housing, Incorporated, to complete the obligations of Housing, Incorporated, in connection with" the North Hills project, including the authority to convey the property and to execute all documents in connection with the performance of the obligations of Housing, Inc., to receive

funds payable to Housing, Inc., and to make payments required to be made by it. The fact that the plaintiff was informed of the Robinson-Johnson agreement and of the power of attorney granted to Robinson by Housing, Inc., and consented thereto, does not show an intent by the plaintiff to release Housing, Inc., from liability on its note held by the plaintiff.

We find in the undisputed facts not the slightest basis for the contention of Housing, Inc., that the Robinson-Johnson agreement of 23 February 1971 (assuming the plaintiff consented thereto) constituted a novation whereby the original obligation of Housing, Inc., to the holder of the note was discharged and a new contract was substituted therefor. As this Court, speaking through Chief Justice Winborne, said in *Tomberlin v. Long,* 250 N.C. 640, 109 S.E. 2d 365 (1959) :

"In this connection 'Novation may be defined as a substitution of a new contract or obligation for an old one which is thereby extinguished. * * * The essential requisites of a novation are a previous valid obligation, the agreement of all the parties to the new contract, the extinguishment of the old contract, and the validity of the new contract * * * . ' 66 C.J.S., Novation, secs. 1 and 3.

" 'Novation implies the extinguishment of one obligation by the substitution of another.' *Walters v. Rogers,* 198 N.C. 210, 151 S.E. 188; *Turner v. Turner,* 242 N.C. 533, 83 S.E. 2d 245; *Bank v. Supply Co.,* 226 N.C. 416, 38 S.E. 2d 503.

" 'Ordinarily, as stated in *Growers Exchange v. Hartman,* 220 N.C. 30, 16 S.E. 2d 398, in opinion by Devin, J., later C.J.' In order to constitute a novation a transaction must have been so intended by the parties."

Obviously, the maker of a note cannot escape liability thereon by agreeing with a third party to transfer such liability to him, and even the assumption of the obligation by such third party does not discharge the maker from liability to the holder of the note unless the holder consented to the release of the maker in exchange for the undertaking of the third party. As this Court said in *Lowe v. Jackson,* 263 N.C. 634, 140 S.E. 2d 1 (1965), speaking through Chief Justice Denny:

"There is nothing in the agreement executed by Porter Lowe that tends to show an intention on his part to do

anything more than to assume the indebtedness outstanding against the property he purchased from his co-plaintiff.

" ' * * * [A] debt assumption agreement by the purchaser of the equity of redemption is not a novation of the mortgage note, there being no element of a further consideration passing between the parties or a substitution of a new for an old or subsisting debt. As between the mortgagor and his grantee assuming the debt, the mortgagor is a surety. But as between the mortgagor and the mortgagee he remains primarily liable for the mortgage debt when the mortgagee does not accept or rely upon the debt assumption agreement, even though the mortgagee accepts from the purchaser of the equity partial payments on the note and extends the time of payment without notice to the mortgagor. And the mortgagee, upon default may either sue *in rem* by foreclosure, or *in personam* on the note against the mortgagor and against the purchaser of the equity of redemption on a contract made for the mortgagee's benefit. * * * . ' Strong's North Carolina Index, Vol. 3, Mortgages and Deeds of Trust, § 15; *Bank v. Whitehurst,* 213 N.C. 302, 165 S.E. 793; *Brown v. Turner,* 202 N.C. 227, 162 S.E. 608."

[4] As above noted, nothing whatever in the undisputed facts, or in any other showing by Housing, Inc., indicates either an assumption by Robinson of Housing, Inc.'s, liability upon the note to the plaintiff or the plaintiff's intent to accept any promise by Robinson in lieu of the promise by Housing, Inc. Consequently, nothing in the record supports the contention of Housing, Inc., that it was released from liability upon the note in suit by a novation.

[6] Housing, Inc., next contends that it was released from liability upon the note by reason of the fact that, after the making of the Robinson-Johnson agreement, Phases I through V of the North Hills development were conveyed to the Housing Authority of the City of Winston-Salem and were released from the deed of trust by the plaintiff, for which properties the Housing Authority paid a total of $2,873,636, of which amount $2,413,427.39 was credited upon the note by the plaintiff and approximately $450,000 "went to Robinson." It is not contended that the Housing Authority of the City of Winston-Salem paid less for Phases I through V than the agreed price therefor

specified in the contract between it and Housing, Inc., which contract was in effect at the time of and was a basis for the making of the loan by the plaintiff to Housing, Inc., nor is it contended that such price was less than the fair value of these properties. Housing, Inc., having contracted to sell these properties and having conveyed them to the purchaser by its deed (presumably executed in its name by the holder of its power of attorney), cannot complain of the plaintiff for having joined in such conveyance for the purpose of releasing the properties from the lien of the deed of trust. Without such release it, obviously, could not have sold the properties in performance of its contract with the Housing Authority. Its contention is that to the extent of the $450,000 which "went to Robinson," the plaintiff has released properties improperly and has, thereby, released Housing, Inc., from liability upon the note, at least to the extent of the $450,000.

Housing, Inc., also contends that it has been released from all liability upon the note by reason of the fact that, following the agreement between Robinson and Johnson, the plaintiff "granted to C. P. Robinson, Jr., a binding extension of time (from February 11, 1972 to November 1, 1972) within which to repay the loan." In its answers to interrogatories, the plaintiff concedes that "an extension of the due date was made extending the due date from February 11, 1972 to November 1, 1972." In its brief, the plaintiff asserts that such extension was granted to Housing, Inc., through Robinson as its attorney in fact under the above mentioned power of attorney granted to him by Housing, Inc.

In support of its claim that it has been released from liability on the note by the above mentioned release of security and by the above mentioned extension of time for payment, Housing, Inc., relies upon G.S. 45-45.1 which provides:

> "*Except where otherwise provided* in the mortgage or deed of trust or *in the note* or other instrument secured thereby, or except where the mortgagor, or grantor of a deed of trust otherwise consents:

> "(1) Whenever real property which is encumbered by a mortgage or deed of trust *is sold* and the *grantee assumes* and agrees to pay such mortgage or deed of trust, and thereafter the mortgagee or secured creditor under the deed of trust gives the grantee a legally binding extension of

time, or releases the grantee from liability on the obligation, the mortgagor or grantor of the deed of trust is released from any further liability on the obligation.

"(2) Whenever real property which is encumbered by a mortgage or deed of trust *is sold* and the *grantee assumes* and agrees to pay such mortgage or deed of trust, and thereafter the mortgagee or secured creditor under the deed of trust or trustee acting in his behalf releases any of the real property included in the mortgage or deed of trust, the mortgagor or grantor of the deed of trust is released to the extent of the value of the property released, which shall be the value at the time of the release or at the time an action is commenced on the obligation secured by the mortgage or deed of trust, whichever value is the greater." (Emphasis added.)

[Paragraphs (3) and (4) are identical with the above quoted paragraphs, except that Paragraph (3) and Paragraph (4) relate to sales of encumbered property subject to the encumbrance.]

This statute does not support the contention of Housing, Inc. So far as the alleged agreement to extend time for payment is concerned, it is a sufficient answer that the note made by Housing, Inc., to the plaintiff expressly provides:

"All parties to this note, including endorsers, sureties, and guarantors, if any, hereby waive presentment for payment, demand, protest, notice of nonpayment or dishonor and of protest, and any and all other notices and demands whatsoever, and agree to remain bound until the principal and interest are paid in full *notwithstanding any extensions of time for payment which may be granted,* even though the period of extension be indefinite, and notwithstanding any inaction by, or failure to assert any legal right available to, the holder of this note." (Emphasis added.)

[5] Thus, even if the Robinson-Johnson agreement had constituted an assumption of the note by Robinson, and a conversion of the liability of Housing, Inc., from that of principal debtor to that of surety, which, as above noted, it did not, the express provision in the note would prevent an extension of time granted to Robinson from releasing Housing, Inc., its obligation as surety.

It is likewise true that the alleged release of the mortgaged property, above mentioned, would not effect a release of Housing, Inc., from its liability mentioned upon the note.

[6]    Paragraphs (2) and (4) of G.S. 45-45.1 contemplate a sale of encumbered real estate to a "grantee" thereof. The Robinson-Johnson agreement, upon which Housing, Inc., relies, and other undisputed facts in the record, show conclusively that there was no sale and conveyance of the North Hills properties to Robinson. The title thereto remained in Housing, Inc. It granted to Robinson its power of attorney to receive payments due it, to make payments due by it and to execute conveyances and other documents necessary to complete the development and sale of the North Hills project. Thus, the conveyance of Phases I through V to the Housing Authority of the City of Winston-Salem, the collection of the proceeds thereof and the disbursement of the proceeds thereof were made by Robinson as attorney in fact of Housing, Inc. Nothing in the record indicates that in these matters Robinson exceeded his authority from Housing, Inc., or that the $450,000 which "went" to him was applied or used otherwise than in accord with the knowledge of and the authority given by Housing, Inc.

We, therefore, conclude that nothing in this record would support a finding that Housing, Inc., has been released and discharged from liability on its note by reason of a novation, an extension of time for payment, or a release of any part of the property from the lien of the deed of trust.

[8]    The final contention of Housing, Inc., is that, even though it has not been released from all liability upon its note, it is entitled to a substantial credit thereon by reason of alleged improprieties in the foreclosure of the deed of trust securing the note.

It is undisputed that the substitute trustee in the deed of trust offered the property for sale at public auction, under the power of sale contained in the deed of trust, on 30 October 1972, at which sale the plaintiff was the highest bidder at the price of $1,000,000; on 14 November 1972, the substitute trustee conveyed the property to the nominee of the plaintiff and the net proceeds of the sale were credited by the plaintiff to the balance alleged to be then due upon the note; and on 29 November 1972 (the deed being recorded 12 December 1972), the nominee of the plaintiff conveyed the property to the Housing Authority

of the City of Winston-Salem for an amount substantially in excess of the bid placed by the plaintiff at the trustee's foreclosure sale. Housing, Inc., contends that it is entitled to a credit upon the note equal to the full amount so received by the plaintiff's nominee from the Housing Authority.

The properties so sold consisted primarily of Phases VI through VIII of the North Hills project. Housing, Inc., alleges that, under its original contract with the Housing Authority, these, upon completion, were to be conveyed to the Housing Authority for a total of $1,152,225 and, pursuant to such contract, there was also due it for "extras" and "retainage" an additional $55,000, so that the total of $1,207,225 should have been credited upon the note rather than the $991,007 which was so credited by the plaintiff as the net proceeds of the foreclosure sale. To its response to the plaintiff's interrogatories, Housing, Inc., attached the closing statement concerning the sale from the plaintiff's nominee to the Housing Authority. This closing statement showed the plaintiff's nominee sold the properties to the Housing Authority for $1,153,225, to which sale price certain adjustments were made reducing the net payment by the Housing Authority to $1,117,560.66.

In support of its motion for summary judgment, the plaintiff filed an affidavit of Archie C. Walker, Vice President and Chief Staff Attorney of its nominee, to this effect: At the time the properties purchased at the foreclosure sale were resold by the plaintiff's nominee to the Housing Authority, the contemplated construction thereon had not been completed; the plaintiff and the Housing Authority then entered into a contract for the conveyance of the property to the Housing Authority for $1,149,612, this being the original sale price for the completed properties specified in the contract between the Housing Authority and Housing, Inc., less an item of $3,613 pursuant to a "change order"; the plaintiff promised in such contract to complete the construction at its expense; the plaintiff did complete such construction at the cost to it of $57,300.51 and incurred certain other expenses in connection with such sale to the Housing Authority; and at no time prior to such conveyance to the Housing Authority did *the plaintiff* have "a firm contract with Housing Authority" for the sale to the Authority of these properties.

In its motion for summary judgment, Housing, Inc., asserted:

"That pursuant to the foreclosure of the Deed of Trust as described in Plaintiff's Complaint the Plaintiff as mortgagee purchased said property at the foreclosure sale; that the amount of the bid of the mortgagee at said foreclosure sale was substantially less than its true value; * * * and the Defendant, Housing, Inc., [is] entitled to an offset against the amount claimed in the Plaintiff's Complaint that said offset should be measured by the true value of said property at the time of the foreclosure sale less the amount bid by the Plaintiff, mortgagee, at the foreclosure sale."

The deposition of Archie C. Walker was to the effect that while the amount of the bid placed may have been influenced by the potential for selling the property to the Housing Authority, that was not the only consideration, the main consideration being the market value of the property if the purchaser had to resell it on the open market. His deposition further stated: The loan would not have been made originally but for the fact that Housing, Inc., had the contract with the Housing Authority for the purchase of the property upon completion, a copy of which contract was given to the plaintiff before the loan was made; in his opinion, the determination of the amount to be bid for the property at the foreclosure sale did not take into account the possibility of a resale to the Housing Authority; the plaintiff was not legally obligated to sell the property to the Housing Authority; prior to the foreclosure, he knew that the Housing Authority had made efforts to get the project completed and at the time of the foreclosure he understood that an indication had been made that the plaintiff probably could dispose of the property to the Housing Authority under the original contract.

The deposition of Mr. Browder, the substitute trustee who conducted the foreclosure sale, was to the effect that, as of the time of the foreclosure sale, he knew of the probability that, if the plaintiff, through its nominee, acquired title at the foreclosure sale, it would be able to complete the project and sell it to the Housing Authority pursuant to the contract which Housing, Inc., had with the Housing Authority. Mr. Browder's law firm represented both the Housing Authority and the plaintiff, generally.

The plaintiff's contention is that, at the time of the foreclosure sale, Phases VI through VIII had not been completed and the plaintiff had no contract with the Housing Authority to purchase the properties until after the plaintiff became the highest bidder at the foreclosure sale. It contends that, after it so became the highest bidder at the foreclosure sale, the plaintiff agreed with the Housing Authority to complete the construction and to do other specifed things and, thereupon, the conveyance to the Housing Authority was made.

G.S. 45-21.36 provides:

"*Right of mortgagor to prove in deficiency suits reasonable value of property by way of defense.*—When any sale of real estate has been made by a mortgagee, trustee, or other person authorized to make the same, at which the mortgagee, payee or other holder of the obligation thereby secured becomes the purchaser and takes title either directly or indirectly, and thereafter such mortgagee, payee or other holder of the secured obligation, as aforesaid, shall sue for and undertake to recover a deficiency judgment against the mortgagor, trustor or other maker of any such obligation whose property has been so purchased, it shall be competent and lawful for the defendant against whom such deficiency judgment is sought to allege and show as a matter of defense and offset, but not by way of counterclaim, that the property sold was *fairly worth the amount of the debt* secured by it at the time and place of sale *or that the amount bid was substantially less than its true value,* and, upon such showing, to defeat or offset any deficiency judgment against him, either in whole or in part * * * ." (Emphasis added.)

In *Loan Corporation by Trust Co.*, 210 N.C. 29, 185 S.E. 482 (1936), aff'd 300 U.S. 124, 57 S.Ct. 338, 81 L.Ed. 552 (1937), the plaintiff sued for a deficiency judgment upon a note secured by a deed of trust which was foreclosed by exercise of the power of sale contained therein, at which sale the defendant alleged the land was purchased for the benefit of the plaintiff holder of the note for an amount less than the fair value. The jury having found that at the time of the foreclosure sale the property was fairly worth more than the amount due upon the note, a judgment was entered that the plaintiff recover nothing. This was affirmed on appeal to this Court which

held that the foregoing statute is not a violation of the Obligation of Contracts Clause of the United States Constitution, or of other provisions of the Federal and State Constitutions relied upon by the plaintiff, the Court saying:

> "The statute recognizes the obligation of a debtor who has secured the payment of his debt by a mortgage or deed of trust to pay his debt in accordance with his contract, and does not impair such obligation. Nor does the statute hinder, delay, or defeat, in whole or in part, the right of the creditor to enforce such obligation by an action instituted by him against his debtor in a court of competent jurisdiction. There is nothing in the statute which prevents a recovery by the creditor in such action of a judgment for the amount due on the debt. The statute provides only that when the creditor has elected to become the purchaser of the property conveyed by the mortgage or deed of trust at a sale made under a power of sale contained in the mortgage or deed of trust, and thereafter, pursuant to such sale and purchase, acquires title to the property, he shall not recover judgment against his debtor for any deficiency, after the application of the amount of his bid as a payment on the debt, *without first accounting to his debtor for the fair value of the property at the time and place of the sale, and that such value shall be determined by the court.* In such case, the amount bid by the creditor at the sale, and applied by him as a payment on the debt, is not conclusive as to the value of the property." (Emphasis added.)

The fair value, as of the date of the foreclosure sale, of the properties conveyed to the nominee of the plaintiff pursuant to such sale is, therefore, a material fact with reference to the amount, if any, which the plaintiff is entitled to recover from the defendant upon the note in suit. Obviously, this is a fact which is here in controversy and which must be determined by the court.

[7] The foregoing statute does not forbid the holder of the note secured by a deed of trust to purchase the property at a foreclosure sale conducted pursuant to the power of sale contained in the deed of trust, nor does it entitle the debtor to have credited upon the note whatever profit such purchaser may realize upon a subsequent sale of the property. There is no principle of law, apart from this statute, which entitles the debtor

to such credit simply by reason of such subsequent sale of the property at a price greater than the bid at the foreclosure sale. See: *McKnight v. United States,* 259 F. 2d 540 (9th Cir. 1958); *General Auto Truck Co. v. Rust,* 88 F. 2d 774 (D.C. Cir. 1936); *Gehlert v. Smiley,* 114 S.W. 2d 1029 (Mo. 1937). Such subsequent sale would simply be a circumstance indicating the fair value of the property at the time of the foreclosure, the weight to be given it depending upon other circumstances such as the lapse of time between the foreclosure and the subsequent sale and the known probability, at the time of the foreclosure sale, that such subsequent sale could be made.

[8]    The Superior Court properly retained the present matter upon its docket for a determination of the amount, if any, which should be credited upon the note by reason of the plaintiff's having purchased the property for less than its fair value at the foreclosure sale.

G.S. 1A-1, Rule 56(c), provides with reference to the granting of a motion for summary judgment:

> "* * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is genuine issue as to the amount of damages. * * *."

There being no genuine issue of any material fact with reference to the claim of Housing, Inc., that it has been released from all liability upon the note by (1) a novation, (2) an extension of time granted for the payment of the note, or (3) a release of the encumbered property from the lien of the deed of trust, and it appearing, as a matter of law, from the uncontroverted facts, that no such release occurred, it was not error for the Superior Court to deny the motion of Housing, Inc., for summary judgment, nor was it error to grant summary judgment that Housing, Inc., is liable upon the note for the unpaid balance thereof, if any, after all proper credits have been allowed. It was error to grant summary judgment in favor of the plaintiff for a specified amount, the amount of the credit upon the note to which Housing, Inc., is entitled, by reason of

the plaintiff's having purchased the property at the foreclosure sale for less than its then fair value, being at issue. *Kessing v. Mortgage Corp., supra.*

The burden was upon the plaintiff to establish the lack of any material issue of fact with reference to the amount recoverable by it. *Railway Co. v. Werner Industries,* 286 N.C. 89, 209 S.E. 2d 734 (1974) ; *Zimmerman v. Hogg and Allen, supra; Savings & Loan Assoc. v. Trust Co.,* 282 N.C. 44, 191 S.E. 2d 683 (1972) ; *Page v. Sloan,* 281 N.C. 697, 190 S.E. 2d 189 (1972) ; *Singleton v. Stewart,* 280 N.C. 460, 186 S.E. 2d 400 (1972). This it has not done.

This action is, therefore, remanded to the Court of Appeals for the entry of an order by it further remanding the action to the Superior Court with instructions that the judgment of the Superior Court entered on 17 June 1975 be vacated and a new judgment be entered granting the motion of the plaintiff for summary judgment that the defendant, Housing, Inc., is liable to the plaintiff for the balance of principal and interest due upon the note in suit, after crediting upon the note the excess, if any, of the fair value at the time of the foreclosure sale of the property sold thereat over and above the amount of the plaintiff's bid at such sale, and retaining the cause upon the docket of the Superior Court for determination of the amount of such credit and for further determination of the right, if any, of the defendant Housing, Inc., to indemnification by the defendant, C. P. Robinson, Jr.

Reversed and remanded.