IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-466

Filed 31 December 2024

Forsyth County, No. 22CVS2794

CL HOWARD INVESTMENTS I, LLC, Plaintiff,

v.

WILMINGTON SAVINGS FUND SOCIETY, FSB as Trustee for BCAT 2020-3TT; and SUBSTITUTE TRUSTEE SERVICES, INC., Defendants.

Appeal by defendants from order entered 7 December 2023 by Judge Eric C. Morgan in Forsyth County Superior Court. Heard in the Court of Appeals 6 November 2024.

> *Pendergrass Law Firm, PLLC, by James K. Pendergrass, Jr., for plaintiff-appellee.*

> *The Hutchens Law Firm & The Law Office of John T. Benjamin, Jr. PA, by Claire Collins Dickerhoff and John T. Benjamin, Jr., for defendants-appellants.*

GORE, Judge.

Defendants appeal the order granting plaintiff's motion for summary judgment and denying defendants' motion for judgment on the pleadings. The issue before this Court is whether pursuant to N.C.G.S. § 47-20, a senior deed of trust loses its priority to a junior deed of trust when the senior deed of trust is modified via a loan modification to extend the maturity date and filed at a date later than the junior deed of trust's initial filing date. We hold it does not. Upon careful review of the briefs and the record, we reverse and remand for the reasons herein.

**I.**

On 18 January 1999, Linda M. Anderson ("debtor") granted a first deed of trust for the property located at 4015 Burnham Court, Winston Salem, North Carolina, 27105 as security for repayment of a loan in the amount of $52,850.00 (the "Senior Deed of Trust"). The Senior Deed of Trust was registered in Book 2047, Page 188, in the Forsyth County Register of Deeds. On the same day, debtor also granted a second deed of trust as security for repayment of a second loan in the amount of $22,650.00 (the "Junior Deed of Trust"). The Junior Deed of Trust was registered in Book 2047, Page 196, in the Forsyth County Register of Deeds. It is undisputed, that at the time of registration, the Junior Deed of Trust was in a second lien position to the Senior Deed of Trust in the chain of title to the property.

Both deeds of trust reached their maturity dates on 22 January 2014. On 1 October 2014, the holder of the note and the Senior Deed of Trust entered into a loan modification ("Loan Modification") with debtor to modify the maturity date of the loan from 2014 to 2033, and to recapitalize the unpaid principal balance of $46,620.96. The Loan Modification stated that all the covenants, agreements, stipulations, and conditions contained in the Note and Senior Deed of Trust were to "remain in full force and effect, except as . . . modified."

On 17 May 2021, the Junior Deed of Trust was foreclosed. The Notice of Foreclosure of a Deed of Trust was registered in Book 3618, Page 4086 in the Forsyth County Register of Deeds. Plaintiff purchased the property in 2021, and a Special

Warranty Deed titled to plaintiff was registered in Book 3655, Page 2042. In 2022, the holder of the Senior Deed of Trust and Loan Modification initiated foreclosure proceedings after debtor defaulted on the loan as modified.

Plaintiff filed a declaratory action (the present case) against defendants pursuant to N.C.G.S. § 47-20, seeking declaratory judgment that the Senior Deed of Trust was extinguished upon recording of the Loan Modification and that plaintiff had superior title in the chain of title to the property. Defendants filed motions in opposition to the complaint, and plaintiff filed a motion for summary judgment. In response, defendants filed a motion for judgment on the pleadings. The trial court heard arguments and entered an order denying defendants' motion for judgment on the pleadings and granting plaintiff's motion for summary judgment. Defendants timely appealed the final order.

## II.

Defendants appeal of right pursuant to N.C.G.S. § 7A-27(b)(1). Defendants seek review of one issue: whether defendants' Senior Deed of Trust lost its priority lien position to the Junior Deed of Trust upon its filing of a Loan Modification that extended the Senior Deed of Trust's maturity date and recapitalized the remaining principal balance. Plaintiff argues that according to section 47-20, the Loan Modification effectively extinguished the Senior Deed of Trust and gave its Junior Deed of Trust a first priority lien. Plaintiff further argues that upon the foreclosure

CL Howard Invs. I, LLC v. Wilmington Sav. Fund Soc'y, FSB

*Opinion of the Court*

of the Junior Deed of Trust, the Loan Modification was extinguished, and defendants could no longer bring a foreclosure action against the real property.

Conversely, defendants argue the Loan Modification was merely an extension of the Senior Deed of Trust, and therefore, the later filing date on the Loan Modification had no effect on the priority position of the Senior Deed of Trust. Defendants argue they could still initiate foreclosure proceedings upon default of the loan.

We have the same standard of review for a motion for summary judgment and a motion for judgment on the pleadings. We review these motions de novo. *See Toomer v. Branch Banking & Tr. Co.*, 171 N.C. App. 58, 66, *disc. rev. denied*, 360 N.C. 78 (2005); *see also Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572 (1999). Plaintiff and defendants agree there was no genuine issue of material facts—the facts are undisputed—and instead seek review of whether the trial court erred in its determination as a matter of law. Accordingly, under a de novo review, we "consider the matter anew and freely substitute our own judgment for that of the lower court." *N.C. Farm Bureau Mut. Ins. Co. v. Herring*, 385 N.C. 419, 422 (2023) (cleaned up).

Defendants argue the trial court erred by granting plaintiff's motion for summary judgment that enjoined the foreclosure of the Senior Deed of Trust and quieted title to plaintiff, free and clear of the Senior Deed of Trust. Specifically, defendants argue the trial court erred by determining as a matter of law that the

Senior Deed of Trust, as modified, was extinguished upon the foreclosure of the Junior Deed of Trust. We agree.

Plaintiff relied upon section 47-20 of the North Carolina General Statutes in its argument that the filing of the Loan Modification extinguished the Senior Deed of Trust and elevated the Junior Deed of Trust to a senior lienholder position. Section 47-20 states,

> No deed of trust or mortgage of real or personal property, or of a leasehold interest or other chattel real, or conditional sales contract of personal property in which the title is retained by the vendor, shall be valid to pass any property as against lien creditors or purchasers for a valuable consideration from the grantor, mortgagor or conditional sales vendee, but from the time of registration thereof as provided in this Article . . . . *Unless otherwise stated either on the registered instrument or on a separate registered instrument duly executed by the party whose priority interest is adversely affected*, (i) instruments registered in the office of the register of deeds shall have priority based on the order of registration as determined by the time of registration, and (ii) if instruments are registered simultaneously, then the instruments shall be presumed to have priority as determined by:
> (1) The earliest document number set forth on the registered instrument.
> (2) The sequential book and page number set forth on the registered instrument if no document number is set forth on the registered instrument.

N.C.G.S. § 47-20 (2023) (emphasis added).

Plaintiff's argument in reliance on this statute, which the trial court appeared to have accepted, is twofold. Plaintiff argues the Loan Modification effectively extinguished the Senior Deed of Trust upon its registration. Because section 47-20 promotes lien position based upon the earlier registration, plaintiff argues that its

Junior Deed of Trust stepped into a senior lien position. Plaintiff argues the foreclosure of the Junior Deed of Trust had the effect of extinguishing all liens junior to it, and this would include the Loan Modification as it was registered at a later date and recorded at a later sequential book and page number. According to plaintiff, defendants should have sought a subordination agreement to "memorialize [plaintiff's] agreement to remain in a second position subject to the [Loan Modification]" and the failure to do so resulted in the Junior Deed of Trust stepping into a first lien position. Plaintiff's argument is flawed in multiple ways.

First, we address the interpretation of section 47-20. Plaintiff argued the portion of the statute that states, "Unless otherwise stated either on the registered instrument or on a separate registered instrument duly executed by the party whose priority interest is adversely affected," means defendants should have sought a subordination agreement from the junior lienholder to maintain their senior lien position. Whereas defendants argue this language is an exception to the statute's general requirements for establishing priority. Defendants argue the exception simply allows that "in the event there is a separate registered instrument that changes the priority interest of an affected party, then that instrument would control." Upon review of the statute, we determine plaintiff's interpretation goes well beyond the plain language of the statute.

Plaintiff cites no binding case law to support their interpretation. "Statutory interpretation properly begins with an examination of the plain words of the statute.

CL Howard invs. I, LLC v. Wilmington Sav. Fund Soc'y, FSB

*Opinion of the Court*

If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *Belmont Ass'n, Inc. v. Farwig*, 381 N.C. 306, 310 (2022) (cleaned up). "Courts should give effect to the words actually used in a statute and should neither delete words that are used nor insert words that are not used into the relevant statutory language during the statutory construction process." *N.C. Farm Bureau Mut. Ins. Co. v. Dana*, 379 N.C. 502, 510 (2021). "[S]tatutes should be construed so that the resulting construction 'harmonizes with the underlying reason and purpose of the statute.'" *Id.* (citation omitted).

We agree with defendants that the plain language of the statute creates an exception to account for parties that enter into a subordination agreement or any agreement contrary to the general race statute framework. Plaintiff's argued interpretation for a senior lienholder to obtain a subordination agreement from a junior lienholder prior to modifying a loan, would promote foreclosure rather than remedial efforts such as a loan modification. Such an interpretation and application would be contrary to the statutory scheme for mortgages and deeds of trust that promotes remedial measures prior to foreclosure of an owner-occupied residence. *See* N.C.G.S. § 45-21.16C(b) (2023); N.C.G.S. §§ 45-100 et. seq. (2023). Beyond this, adoption of plaintiff's interpretation would require us to insert words not used and would contravene the previously stated statutory interpretation precedence. We will

CL Howard invs. I, LLC v. Wilmington Sav. Fund Soc'y, FSB

*Opinion of the Court*

not go against precedence to support an interpretation that requires word surplusage and clashes with the underlying reason and purpose of the statute.

Next, we address plaintiff's argument regarding the effect the Loan Modification had on the Senior Deed of Trust. Plaintiff appears to argue that because the Senior Deed of Trust was modified and the Loan Modification memorializing this modification was technically registered after the date of the Junior Deed of Trust, the Senior Deed of Trust lost its lien position and became junior to the Junior Deed of Trust. This is a very simplistic and inaccurate application of section 47-20 that disregards what a Deed of Trust is and what a Loan Modification is. "A deed of trust is a three-party arrangement in which the borrower conveys legal title to real property to a third party trustee to hold for the benefit of the lender until repayment of the loan." *Skinner v. Preferred Credit*, 361 N.C. 114, 120 (2006). "When the loan is repaid, the trustee cancels the deed of trust, restoring legal title to the borrower, who at all times retains equitable title in the property." *Id.* at 121. Black's Law Dictionary defines a modification in the context of contract law as "a change to something, an alteration or amendment." *Modification*, *Black's Law Dictionary* (12th ed. 2024). Looking at these definitions, we recognize a loan modification is not an instrument to convey title on its own like a deed of trust and does not exist separate and apart from the instrument it modifies.

There is currently no North Carolina case law that directly addresses the present issue. However, our Courts have discussed loan modifications within the

realm of contract law. Additionally, the Restatement (Third) of Property section 7.3 on loan modifications conforms with the existing North Carolina statutory law and case law that does discuss deeds of trust.

In Chapter 45 of the North Carolina General Statutes on Mortgages and Deeds of Trust, section 45-36.24 provides for extension of maturity dates in security instruments beyond the general statutory limits. Specifically, section 45-36.24 states in part:

> (b) Automatic Lien Expiration. [U]nless the lien of a security instrument has been extended . . . , the security instrument has been foreclosed, or the security instrument has been satisfied of record pursuant to G.S. 45-37, the lien of a security instrument automatically expires, and the security instrument is conclusively deemed satisfied of record pursuant to G.S. 45-37 . . . 15 years after the maturity date [of the secured obligation stated in the security instrument.]
> . . .
>
> (c) Methods To Extend a Lien.--The lien of a recorded security instrument may be extended one or more times by recording (i) a lien maturity extension agreement or (ii) a notice of maturity date. . . . A lien maturity extension agreement or notice of maturity date is ineffective unless recorded before the lien expires. The lien of the original security instrument may not be extended to a date more than 50 years after the date the security instrument was originally recorded in the office of the register of deeds without the written agreement of the then owner of the property encumbered by the lien of the security instrument.
>
> (d) Lien Maturity Extension Agreement.--
>
> > (1) The lien of a recorded security instrument may be extended to a date specified in a lien maturity extension agreement, provided the lien maturity extension agreement is recorded before the lien expires. When a lien maturity extension agreement has been duly recorded, the

lien of the security instrument will expire on the date specified in the lien maturity extension agreement.

(2) A document (including any document that modifies, amends, or restates a security instrument) is a lien maturity extension agreement[.]

N.C.G.S. § 45-36.24(b), (c), (d) (2023). The plain language of this statute provides for an extension of the maturity date in security instruments. The statute makes plain that a maturity date in a security instrument does not expire until, at minimum, fifteen years from the maturity date. § 45-36.24(b). Section 45-36.24(b) states that upon automatic expiration, the security instrument is "conclusively deemed satisfied of record." *Id.* However, parties may extend the maturity date beyond the statutory limitations, if they enter into a lien maturity extension agreement and properly register it. *See* § 45-36.24(c).

Beyond section 45-36.24, the statutorily prescribed foreclosure proceedings for owner-occupied residential property includes a mandate for the clerk to continue the hearing if there is "good cause to believe additional time or additional measures have a reasonable likelihood of resolving the delinquency without foreclosure." § 45-21.16C(b). Loan modifications are identified in this statute as a form of good cause to consider. *See* § 45-21.16C(b). North Carolina statutory law also provides for continued lien priority for loans with future advances. *See* N.C.G.S. § 45-70(a) (2023). The statute unequivocally states future advances on loans do not affect the priority of a lien holder, unless the additional amount or "interest accrued" is greater than

the "maximum principal amount" in the recorded security instrument. § 45-70(a), (a1). In such situations, the amount that exceeds the maximum principal amount "shall not be afforded the priority" that the statute grants to future advances and obligations. *Id.*

North Carolina case law has established the following distinction between a satisfaction and a renewal for deeds of trust and mortgages. "A new note, where not given in payment, but merely in renewal does not change the original debt. *Cable v. Hardin Oil Co.*, 10 N.C. App. 569, 575 (1971). "Where a note is given merely in renewal of another note, and not in payment, the renewal does not extinguish the original debt nor in any way change the debt, except by postponing the time of payment." *W.R. Grace & Co. v. Strickland*, 188 N.C. 369, 372 (1924).[1] However, in the case that the "second note be given and accepted in payment of the debt, and not in renewal of the obligation, a different principle will apply." *Id.* In the case of a mortgage or deed of trust settlement, "by [the mortgagor's] settlement and taking a new note in settlement, with a mortgage to secure it, the [prior mortgage is] discharged, bec[omes] extinct, and the [mortgagee] los[es] [its] lien under it[.]" *Smith v. Bynum*, 92 N.C. 108, 110 (1885). "The substitution of one note and mortgage for another will not discharge the lien of the original note and mortgage unless the latter

---

[1] "[T]he word 'renewal' or 'renewed' signifies more than the substitution of one obligation for another. It means the substitution in place of one engagement of a new obligation on the same terms and conditions—that is, the re-establishment of a particular contract for another period of time." *Id.*

is surrendered to the mortgagor or canceled of record. It is only a renewal or acknowledgment of the same debt." *Wilkes v. Miller*, 156 N.C. 428, 431 (1911).

Finally, we construe a loan modification and its effect on the original deed of trust through the laws of contract. *See Ussery v. Branch Banking & Tr. Co.*, 368 N.C. 325, 335–36 (2015). "When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law. The court determines the effect of their agreement by declaring its legal meaning." *In re Fortescue*, 75 N.C. App. 127, 130 (1985) (internal quotation marks and citations omitted). "The court must construe the language of the contract according to its ordinary meaning, and in light of the stated purpose of the parties in executing the contract, to ascertain the intention of the parties with respect to particular provisions." *Id.*

> The making of a second contract dealing with the subject matter of an earlier one does not necessarily abrogate the former contract. To have the effect of rescission, it must either deal with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution, or it must present such inconsistencies with the first contract that the two cannot in any substantial respect stand together. Before the new contract can be accepted as discharging the old, the fact that such was the intention of the parties must clearly appear.
>
> If upon comparison it should be found that rescission has not been effected, the two instruments must be read and construed together in ascertaining the intent of the parties and in determining what portions of the agreement are still enforceable. In such construction the rules applied to interpretation of a single contract are applicable, perhaps with added propriety. We must, of course, keep within the bounds of the writings, but the circumstances surrounding their execution, the

relation of the parties and the object to be accomplished, are all to be consulted in arriving at the intent.

*Com. Nat'l Bank of Charlotte v. Charlotte Supply Co.*, 226 N.C. 416, 426–27 (1946) (cleaned up).

Based upon this established precedence, we now consider the Loan Modification and its effect upon the Senior Deed of Trust. Both parties acknowledge the Loan Modification modified the Senior Deed of Trust in two ways—it provided for a later maturity date, and it recapitalized the principal amount still owed on the mortgage. The Loan Modification contained the following provisions of interest:

> This Loan Modification Agreement ("Agreement"), effective on 10/01/14 . . . modifies, amends, and supplements (to the extent this Agreement is inconsistent with their terms): (1) the Mortgage, Deed of Trust, . . . or Security Deed ("Security Instrument"), as set forth herein above, and . . . (2) the Loan Agreement ("Note") to Lender, dated January 18, 1999, and secured by the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property" located at 4015 Burnham CT Winston Salem, NC 27105 . . .
>
> Terms not defined in this Agreement are as defined in the Note and/or Security Agreement.
> . . .
>
> 8. (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.
>
> (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any

way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

Except where otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

The Senior Deed of Trust contained the following language about modifications:

This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with Interest, and all renewals, extensions and modifications of the Note; . . . Borrower irrevocably grants and conveys to Trustco and Trustee's successors and assigns, in trust, with power of sale, . . . 4015 Burnham Court Winston Salem, North Carolina 27105.

The plain language of the Senior Deed of Trust and the Loan Modification demonstrates that the parties to the loan intended to modify the Senior Deed of Trust, not extinguish it. The Senior Deed of Trust included a provision to allow for modification; the Loan Modification only extended the maturity date and recapitalized the principal amount to reflect the remaining principal amount from the Senior Deed of Trust. The plain language in the Loan Modification states its purpose is to supplement the Senior Deed of Trust. According to the terms in the Loan Modification, all other terms in the Senior Deed of Trust that were not modified

remain in effect. Accordingly, the Loan Modification was a supplement to the Senior Deed of Trust and did not extinguish the original lien.

The terms of the Restatement (Third) of Property section 7.3(b) are generally followed among multiple jurisdictions. *See* Mortgages and deeds of trust—Modification, 2 N.C. Real Estate § 21:87 (3rd ed.). Having already discussed the statutes and laws related to deeds of trust and loan modifications in North Carolina, we determine that the Restatement (Third) of Property section 7.3(b) properly applies within our established jurisprudence. Section 7.3(b) states the following:

> If a senior mortgage or the obligation it secures is modified by the parties, the mortgage as modified retains priority as against junior interests in the real estate, except to the extent that the modification is materially prejudicial to the holders of such interests and is not within the scope of a reservation of right to modify[.]

Restatement (Third) of Property (Mortgages) § 7.3(b) (1997). Applied to the present case—the Senior Deed of Trust did not lose its priority at the time it registered the Loan Modification. A junior lienholder is charged with notice when there is an unsatisfied mortgage of record to the property. *Collins v. Davis*, 132 N.C. 106, 112 (1903). Plaintiff, the junior lienholder, is also charged with inquiry notice because "inquiry of the mortgagee would have elicited information that the mortgage was still in force as between the original parties." *Id.* at 113.

Both parties properly acknowledge the effect of a foreclosure sale on junior lienholders. "The sale under a mortgage or deed of trust cuts out and extinguishes all liens, encumbrances and junior mortgages executed subsequent to the mortgage

containing the power." *In re Foreclosure of Lien By Ridgeloch Homeowners Ass'n*, 182 N.C. App. 464, 469 (2007) (cleaned up). In the present case, the plaintiff's Special Warranty Deed was recorded after the sale of the foreclosed Junior Deed of Trust. Because the Senior Deed of Trust was not discharged or extinguished by the Loan Modification, the Senior Deed of Trust, as modified by the Loan Modification, remained in a first lien position in the chain of title. Accordingly, the foreclosure proceedings of the Senior Deed of Trust were improperly enjoined, and the Senior Deed of Trust, as modified, was improperly extinguished by the trial court.

Although plaintiff argues the Loan Modification was materially prejudicial, it is enough to say plaintiff was not prejudiced in this case. An extension of the maturity date did not prejudice the Junior Deed of Trust considering the statutory expiration of the Senior Deed of Trust was fifteen years beyond the 21 January 2014 maturity date. The initiation of foreclosure proceedings for the Senior Deed of Trust in 2022 was well within the fifteen-year statutory expiration timeframe even without any modification.

Further, because plaintiff alternatively argued that the Loan Modification was a novation, we briefly discuss what a novation is and recognize the Loan Modification did not meet the requirements of a novation in this case. As stated by our Supreme Court:

> A novation may be defined as a substitution of a new contract or obligation for an old one which is thereby extinguished. The essential requisites of a novation are a previous valid obligation, the agreement

CL Howard invs. I, LLC v. Wilmington Sav. Fund Soc'y, FSB

*Opinion of the Court*

of all the parties to the new contract, the extinguishment of the old contract, and the validity of the new contract.

Novation implies the extinguishment of one obligation by the substitution of another. Ordinarily, as stated in *Growers Exchange v. Hartman*, 220 N.C. 30 (1941), in order to constitute a novation a transaction must have been so intended by the parties.

*Wachovia Realty Inv. v. Hous., Inc.*, 292 N.C. 93, 104 (1977) (cleaned up). As discussed, the plain language in the Senior Deed of Trust and the Loan Modification unequivocally states the intent of the parties—to extend the maturity date—not to extinguish the Senior Deed of Trust and establish the Loan Modification as a new contract.

Because the Loan Modification did not create a new deed of trust nor extinguish the Senior Deed of Trust, and because the Senior Deed of Trust had not expired at the time of the foreclosure proceedings, the trial court erred in its entry of an order that enjoined the foreclosure proceedings and extinguished the Senior Deed of Trust. Therefore, the trial court erred by granting plaintiff's motion for summary judgment and by denying defendants' motion for judgment on the pleadings.

## III.

For the foregoing reasons, we reverse the trial court's order granting plaintiff's motion for summary judgment and denying defendants' motion for judgment on the pleadings, and remand for entry of an order not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges FLOOD and THOMPSON concur.