**IN RE FIFTH THIRD BANK**

[217 N.C. App. 199 (2011)]

IN RE: FIFTH THIRD BANK, NATIONAL ASSOCIATION—
VILLAGE OF PENLAND LITIGATION

No. COA11-310

(Filed 6 December 2011)

**1. Appeal and Error—interlocutory orders and appeals—costs**

Trial court orders taxing costs against plaintiffs were inter-
locutory but appealable where plaintiffs were ordered to immedi-
ately pay a significant amount of money.

**2. Unfair Trade Practices—failed real estate investment—
investment without input from bank**

The trial court did not err by granting summary judgment for
defendant bank on an unfair and deceptive trade practices claim
arising from a failed real estate investment where plaintiff's deci-
sion to invest was made without any input from defendant, plain-
tiff obtained a loan from defendant in order to realize a profit,
plaintiff was aware that the property was essentially undeveloped
and that the extent of his profit would depend upon the success-
ful construction and marketing of the project, and plaintiff real-
ized that he was exposed to certain risks.

**3. Unfair Trade Practices—violation of business policies and
industry standards—not a per se unfair practice**

The violation of internal business policies and general indus-
try standards does not constitute a *per se* violation of the Unfair
and Deceptive Trade Practices Act. Plaintiff's claim, which arose
from a failed real estate investment, depended upon a showing
that defendant bank violated banking laws but plaintiff did not
identify specific statutes or regulations that defendant violated.

**4. Unfair Trade Practices—real estate appraisals—no impact
on investment decision**

Allegedly defective real estate appraisals did not support
a finding of liability pursuant to N.C.G.S. § 75-1.1 where the
appraisals had no impact on plaintiffs' decision to participate in
the investment.

**5. Unfair Trade Practices—relationship between bank and developer—not an unfair and deceptive act**

None of the facts alleged by plaintiffs, if true, demonstrated an inappropriate relationship between defendant bank and real estate developers sufficient to constitute a violation of the Unfair and Deceptive Trade Practices Act.

**6. Unfair Trade Practices—real estate loans—unlicensed and unapproved personnel—no violation**

The involvement of an unlicensed loan coordinator employed by the developers in the preparation of documentation and an appraiser who was not approved by defendant bank was not sufficient to establish the existence of an Unfair and Deceptive Trade Practice violation.

**7. Unfair Trade Practices—real estate development—no duty by bank to monitor or investigate—no reliance on appraisals**

Allegations that defendant bank did not investigate developers, monitor the progress of the development, ensure that the appraisals were accurate, or disclose allegedly unfavorable information to plaintiffs did not establish a valid claim against defendant pursuant to N.C.G.S. § 75-1.1. The undisputed evidence tended to show that plaintiffs' decision to invest did not rest on the appraised value of the unimproved land. Moreover, plaintiffs cited no authority tending to establish that defendant had a legal duty to investigate and monitor the activities of the developers and the progress of the development.

**8. Estoppel—real estate loans—enforcement not estopped**

Defendant bank was not estopped from seeking to enforce its contractual rights following the failure of a real estate investment where plaintiffs alluded to contracts being unenforceable when induced by fraud, but they dismissed their fraud claims prior to defendant's summary judgment hearing and did not adduce evidence tending to show fraud. Moreover, plaintiffs' claim that defendant led the borrowers to believe that plaintiffs' loans were true mortgages rather than personal loans based upon net worth and creditworthiness lacked any evidentiary support.

**9. Unfair Trade Practices—conspiracy—bank and real estate developer—summary judgment**

The trial court did not err by granting summary judgment for defendant bank on a claim that defendant engaged in a civil con-

IN RE FIFTH THIRD BANK

[217 N.C. App. 199 (2011)]

spiracy with real estate developers where it was decided elsewhere that defendants had not engaged in unfair and deceptive trade practices.

**10. Conspiracy—tortious acting in concert—summary judgment—no joint action**

The trial court did not err by granting summary judgment for defendant-bank on a claim for tortious acting in concert with developers arising from a failed real estate development where plaintiffs did not produce any evidence of joint action between defendant and the developers or that defendant's involvement extended beyond the point of merely making loans to investors.

**11. Costs—underlying summary judgment—properly granted**

A challenge to a trial court decision taxing costs to plaintiffs was rejected where the sole basis of the challenge was that summary judgment was erroneously granted to defendant, but in fact it was determined on appeal that summary judgment was properly granted.

Appeal by plaintiffs from judgment entered 5 October 2010 and orders entered 19 November 2010 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 14 September 2011.

*Fuller & Barnes, LLP, by Trevor M. Fuller and Michael D. Barnes, for plaintiffs-appellants.*

*McGuireWoods, LLP, by H. Landis Wade, Jr., Danielle E. Webb, and Steven N. Baker, for defendants-appellees.*

ERVIN, Judge.

Plaintiffs Jerome E. Williams, Jr., M.D.; Jerome E. Williams, Jr., M.D., Consulting LLC; and Adelle A. Williams, M.D., appeal from orders granting summary judgment in favor of Defendant Fifth Third Bank with respect to Plaintiffs' claims against Defendant and Defendant's breach of contract claim against Plaintiffs and taxing the costs against Plaintiffs. On appeal, Plaintiffs contend that the record discloses the existence of genuine issues of material fact relating to their claims against Defendant and Defendant's breach of contract claim against Plaintiffs sufficient to defeat Defendant's summary judgment motion and that, given that the trial court erroneously granted summary judgment in favor of Defendant with respect to the

issue of liability, it also erred by taxing the costs against Plaintiffs. After careful consideration of Plaintiffs' challenges to the trial court's orders in light of the record and the applicable law, we conclude that the trial court's orders should be affirmed.

## I. Factual Background

### A. Substantive Facts

This appeal arises from loans obtained by Plaintiffs for the purpose of investing in a real estate development known as the Village of Penland. Plaintiff Jerome Williams, a cardiologist living in Charlotte, is the owner of Plaintiff Jerome E. Williams, Jr., M.D., Consulting LLC, and the husband of Plaintiff Adelle Williams, M.D.

In 2006, Dr. Williams learned of the existence of the Village of Penland, a residential and commercial development to be located in Mitchell County that was expected to consist of numerous homes, lodges, restaurants, and other amenities. Dr. Williams heard about the Village of Penland from Mike Khaldun, a real estate agent employed by "an investment realty real estate company." After meeting with Mr. Khaldun, Dr. Williams received information about the project from representatives of the developers.

Ultimately, Dr. Williams decided to invest in the Village of Penland project. Acting either individually or through Williams Consulting, Dr. Williams purchased twenty lots in the proposed development at a price of $125,000 per lot. Five of the lots purchased by Dr. Williams, which had a total purchase price of $625,000, were financed using credit extended by Defendant.[1] On 15 March 2006, Dr. Williams closed on a $500,000 loan provided by Defendant, a process which included the execution of a promissory note obligating him to repay that principal amount plus interest.

Unfortunately, the developers failed to use the money obtained from Plaintiffs and other investors to develop the Village of Penland. Ultimately, several individuals associated with the developers entered pleas of guilty to various federal criminal offenses arising from project-related activities. After the failure of the proposed development, Plaintiffs defaulted on their loan payments to Defendant. The present litigation arises from a dispute between the parties over the extent to which Plaintiffs are obligated to repay the loans that they obtained from Defendant.

---

1. The remaining fifteen lots obtained by Plaintiffs were purchased using credit extended by other lending institutions.

IN RE FIFTH THIRD BANK

[217 N.C. App. 199 (2011)]

## B. Procedural History

On 4 April 2008, Plaintiffs filed a complaint against Defendant[2] and others associated with their decision to invest in the Village of Penland, including the other lending institutions from which they borrowed money, the appraisers hired by these lending institutions, and various individuals associated with the developers. In their complaint, Plaintiffs asserted claims sounding in unfair and deceptive trade practices, fraud, constructive fraud, aiding and abetting fraud, fraud in the inducement, negligent misrepresentation, conversion, negligence, tortious action in concert, civil conspiracy, breach of fiduciary duty, breach of contract, breach of the duty of good faith and fair dealing, breach of a surety agreement, and violation of the statutory provisions governing mortgage lending.

On 23 June 2008, Defendant filed an answer in which it denied the material allegations set out in Plaintiffs' complaint, asserted various affirmative defenses, and counterclaimed for the amount owed under the promissory note.

On 23 April 2010, Defendant filed motions seeking summary judgment with respect to the claims asserted by Plaintiffs and with respect to its claim based on the promissory note executed by Plaintiffs. On 7 May 2010, Plaintiffs filed a motion seeking leave to amend their complaint "for the purpose of withdrawing certain claims" in order to "better reflect the evidence that has been developed through the discovery in this matter." On 24 May 2010, the trial court granted Plaintiffs' motion by means of an order stating that:

> . . . [Although Plaintiffs] have fourteen (14) claims against [Defendant, they] . . . seek[] to abandon all but two (2) claims against [Defendant] (Unfair and Deceptive Trade Practices, and Tortious Action in Concert and Civil Conspiracy), and to remove and abandon certain factual allegations against [Defendant], including allegations of fraud. . . . The claims, counterclaims and third-party claims abandoned by [Plaintiffs] . . . are dismissed with prejudice.

A hearing concerning Defendant's summary judgment motion was held on 28 May 2010. On 5 October 2010, the trial court granted Defendant's motion by means of an order which stated, in pertinent part, that:

---

2. Plaintiffs initially named First Charter Bank, from whom the loans at issue in this case were procured, as a party defendant. Subsequently, Fifth Third Bank acquired First Charter. As a result, Fifth Third was substituted for First Charter as the named defendant in this case.

IN RE FIFTH THIRD BANK

[217 N.C. App. 199 (2011)]

. . . Prior to [this] hearing . . . Plaintiffs amend[ed] their pleadings to dismiss . . . all claims against [Defendant] except . . . (1) Tortious Action in Concert and Civil Conspiracy; and (2) Unfair and Deceptive Trade Practices. . . . [A]fter considering the arguments made and briefs submitted by counsel . . . [,] the Court concludes that there is no genuine issue as to any material fact with respect to the First Claim of the Counterclaim [or] the two remaining claims against [Defendant], entitling [Defendant] to Judgment as a matter of law as requested on the First Claim of the Counterclaim and Judgment as a matter of law . . . dismissing all remaining claims against [Defendant]. . . . The two remaining claims against [Defendant] of Tortious Action in Concert and Civil Conspiracy, and Unfair and Deceptive Trade Practices, are dismissed with prejudice[.]

As a result, the trial court awarded Defendant the principal amount due under the promissory note plus interest, attorney's fees, and the costs. On 25 October 2010, Defendant submitted a verified bill of costs seeking to have "reasonable and necessary" costs taxed to Plaintiffs pursuant to N.C. Gen. Stat. § 7A-305(d). On 19 November 2010, the trial court entered an order taxing costs against Plaintiffs in accordance with Defendant's motion. Plaintiffs noted an appeal to this Court from the 5 October 2010 and 19 November 2010 orders.

## II. Legal Analysis

### A. Appealability

[1] "A judgment is either interlocutory or the final determination of the rights of the parties." N.C. Gen. Stat. § 1A-1, Rule 54(a). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) (citation omitted). "As a general rule, interlocutory orders are not immediately appealable. However, 'immediate appeal of interlocutory orders and judgments is available in at least two instances': when the trial court certifies, pursuant to N.C. [Gen. Stat.] § 1A-1, Rule 54(b), that there is no just reason for delay of the appeal; and when the interlocutory order affects a substantial right under N.C. [Gen. Stat.] §§ 1-277(a) and 7A-27(d)(1)." *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009) (citing *Davis v. Davis*, 360 N.C. 518, 524, 631 S.E.2d 114, 119 (2006), and quoting *Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 579 (1999)).

Although Plaintiffs concede that their appeal has been taken from an interlocutory order, they assert that the "entry of Judgments in favor of the Bank . . . affects a substantial right by ordering [Plaintiffs] to make immediate payment of a significant amount of money[.]" In support of this contention, Plaintiffs cite *Estate of Redden v. Redden,* 179 N.C. App. 113, 116-17, 632 S.E.2d 794, 798 (2006), *remanded on other grounds,* 361 N.C. 352, 649 S.E.2d 638 (2007) (stating that "[t]he Order appealed affects a substantial right of [Defendant] by ordering her to make immediate payment of a significant amount of money," thereby giving this Court "jurisdiction over the Defendant's appeal pursuant to N.C. Gen. Stat. [§] 1-277 and N.C. Gen. Stat. [§] 7A-27(d)"), and *Wachovia Realty Investments v. Housing, Inc.,* 292 N.C. 93, 99, 232 S.E.2d 667, 671-72 (1977), in which the Supreme Court stated that:

> [T]he entry of the judgment that the plaintiff have and recover of Housing, Inc., $204,603.55 affects a substantial right of Housing, Inc. . . . As the Court of Appeals observed in its opinion, [N.C. Gen. Stat. §] 1-269 and [N.C. Gen. Stat. §] 1-289 provide for a stay of execution upon a money judgment, provided the judgment debtor gives a bond or makes a deposit, and [N.C. Gen. Stat. §] 1A-1, Rule 62(g), authorizes the court which rendered the judgment to stay its enforcement, pending its determination of other aspects of the litigation[.] . . . Either of those procedures would, however, even if successful, require Housing, Inc., to incur substantial expense. Thus, the existence of those procedures for staying execution on the judgment does not prevent the entry of the judgment from affecting a substantial right of the judgment debtor.

Defendant does not appear to dispute Plaintiffs' claim that the challenged orders affect a substantial right. As a result, we conclude that Plaintiffs are entitled to challenge the trial court's orders on an interlocutory basis.

## B. Standard of Review

According to N.C. Gen. Stat. § 1A-1, Rule 56(c), summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." "A party moving for summary judgment may prevail if it meets the burden (1) of proving an essential element of the opposing party's claim is nonexistent, or (2) of showing through discovery that the opposing party cannot produce evidence to support an essential element of his

or her claim." *Lowe v. Bradford*, 305 N.C. 366, 369, 289 S.E.2d 363, 366 (1982) (citations omitted). "The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Liberty Mut. Ins. Co. v. Pennington*, 356 N.C. 571, 579, 573 S.E.2d 118, 124 (2002) (citing *DeWitt v. Eveready Battery Co.*, 355 N.C. 672, 681, 565 S.E.2d 140, 146 (2002)). "[O]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664, *disc. review denied*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 353 N.C 371, 547 S.E.2d 810, *cert. denied*, 534 U.S. 950, 122 S. Ct. 345, 151 L. Ed. 2d 261 (2001).

### C. Substantive Legal Analysis

### 1. UDTPA Claim

[2] In their first challenge to the trial court's order, Plaintiffs contend that the trial court erred by granting summary judgment in favor of Defendant with respect to their unfair and deceptive trade practices claims. We disagree.

### a. Nature of a UDTPA Claim

N.C. Gen. Stat. § 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful," with treble damages available to a plaintiff who successfully asserts a claim pursuant to N.C. Gen. Stat. § 75-1.1. N.C. Gen. Stat. § 75-16. "In order to establish a violation of N.C. [Gen. Stat.] § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs," with "[t]he determination of whether an act or practice is an unfair or deceptive practice that violates N.C. [Gen. Stat.] § 75-1.1 [being] a question of law for the court." *Gray v. N.C. Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000) (citing *First Atl. Mgmt. Corp. v. Dunlea Realty Co.*, 131 N.C. App. 242, 252, 507 S.E.2d 56, 63 (1998), and *Ellis v. Northern Star Co.*, 326 N.C. 219, 226, 388 S.E.2d 127, 131 (1990)).

"A practice is unfair [for purposes of establishing liability pursuant to N.C. Gen. Stat. § 75-1.1] when it offends established public policy as well as when the practice is immoral, unethical, oppressive,

unscrupulous, or substantially injurious to consumers." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981) (citing *Johnson v. Insurance Co.*, 300 N.C. 247, 263, 266 S.E. 2d 610, 621 (1980), *overruled in part on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc.*, 323 N.C. 559, 569, 374 S.E.2d 385, 391-92 (1988)). Thus, "a violation of a regulatory statute which governs business activities 'may [in some circumstances] also be a violation of N.C. Gen. Stat. § 75-1.1.' While such a regulatory violation may offend N.C. [Gen. Stat.] § 75-1.1, the violation does not automatically result in an unfair or deceptive trade practice under that statute." *Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 70, 653 S.E.2d 393, 398 (2007) (quoting *Drouillard v. Keister Williams Newspaper Services*, 108 N.C. App. 169, 172, 423 S.E.2d 324, 326 (1992), *disc. review denied*, 333 N.C. 344, 427 S.E.2d 617 (1993)). For that reason, a violation of a consumer protection statute may, in some instances, constitute a *per se* violation of the UDTPA.

### b. Factual Basis for Plaintiffs' Claims

In his deposition, Dr. Williams acknowledged that his decision to purchase lots in the Village of Penland was "strictly an investment," since he had no intention of building on the lots in question. At the time that he decided to invest in the Village of Penland, Dr. Williams knew that none of the amenities described in the development package that he had received from the developers actually existed. In addition, Dr. Williams was aware that the necessary utility, water, and sewer permits had not been obtained. Dr. Williams recognized that "[a]ll real estate investments potentially may appreciate or may depreciate" and stated that:

> [It was] an investment program[.] . . . to provide an investment for the completion of [the Village of Penland.] . . . [When a] portion of the development was completed, . . . then you would potentially get a return on the investment. . . . [T]he investment was essentially the . . . loaning of one's ability [to obtain] credit[.] . . . [T]he timeline included year two after the investment, there would be a buy-back of the properties. And then after year five, if there is any realized growth, then that's when the return of your investment would occur.

As a result, the record clearly reflects that Dr. Williams knew that he "was investing in a pre-construction project at the earliest possible stage" by providing funds to facilitate the developers' ability to complete the project.

In making the decision to invest in the Village of Penland, Dr. Williams relied entirely on information provided by individuals and entities other than Defendant. Among other things, Dr. Williams repeatedly admitted that he had never spoken with any representatives of Defendant prior to deciding to invest in the Village of Penland, that he had not had any contact with Defendant prior to that point, that Defendant never made any representations that affected his decision to invest in the project, and that he "had no communication with anybody at [Defendant]" prior to making his investment decision. Dr. Williams acknowledged that Defendant had not been guilty of making any misrepresentations to him at any time.

Dr. Williams never visited the location at which the Village of Penland was to be built or examined photographs of the lots that he had purchased. Based upon his examination of the information packet provided to him by the developers, Dr. Williams knew that, although "every lot was $125,000," his lots had different sizes and were in different locations. Dr. Williams never discussed which lots he would actually purchase with the developers given his understanding that "the lots were grouped" and that he "didn't have a choice" about which lots would be assigned to him. Dr. Williams "didn't know whether the lots that [he] bought were on the side of a hill, the side of a creek, and had rocks and trees on them or just field and grass" and "had no idea what they looked like." Dr. Williams never procured an appraisal of the lots that he purchased in the Village of Penland, never discussed the appraised value of the lots with anyone, did not see the appraisals ordered by Defendant until after the date upon which the loan in question closed, and admitted that, rather than relying on the appraisals that Defendant had obtained, he "assumed" that Defendant's decision to extend credit to him was based, at least in part, upon the appraised value of the lots that he purchased.

In light of this undisputed evidence, we conclude that Dr. Williams' decision to invest in the Village of Penland was made without any input from Defendant; that he obtained a loan from Defendant in order to realize a profit stemming from the development of the Village of Penland; that he was aware that the property was essentially undeveloped when he decided to invest; that he realized that investing in the Village of Penland exposed him to certain risks; and that he understood that the extent to which he realized a profit as a result of his investment would depend upon the extent to which the developers successfully constructed and marketed the proposed project. On the other hand, it is equally clear that Dr. Williams' deci-

**IN RE FIFTH THIRD BANK**

[217 N.C. App. 199 (2011)]

sion to invest in the Village of Penland did not rest upon the value of the undeveloped property at the time that he made his investment.

### c. Validity of Plaintiffs' UDTPA Claim

**[3]** In challenging the trial court's decision to grant summary judgment in favor of Defendant with respect to Plaintiffs' unfair and deceptive trade practices claims, Plaintiffs contend that Defendant's "conduct was unfair because it violated public policy, as expressed in the banking laws and regulations, and was unethical." As part of their effort to persuade us of the merits of this position, Plaintiffs assert, based upon language contained in various decisions from this and other jurisdictions, that "the banking laws" are, in a general sense, intended to further the public interest and that, if Defendant violated "the banking laws," relevant industry standards, or its own internal policies, such actions would "contravene[] North Carolina public policy, and constitute[] unfair trade practices which violate the UDTPA." Plaintiffs do not, however, cite any authority tending to establish that a violation of general industry standards or Defendant's internal policies would automatically render Defendant liable under N.C. Gen. Stat. § 75-1.1, and we know of none. As a result, we hold that a violation of internal business policies and general industry standards does not constitute a *per se* violation of the UDTPA and that Plaintiffs' claim must stand or fall on the basis of their contention that Defendant is liable to Plaintiffs pursuant to N.C. Gen. Stat. § 75-1.1 for violating the "banking laws." We conclude, however, that Plaintiffs have failed to show that Defendant's alleged violations of "the banking laws" constitute a UDTPA violation.

A significant problem inherent in Plaintiffs' argument is the fact that, while they repeatedly assert that Defendant violated "the banking laws," Plaintiffs have failed to identify any specific statutes or regulations that Defendant allegedly violated.[3] To the extent that we have been able to divine the specific basis of Plaintiffs' allegations

---

3. In their brief, Plaintiffs have directed our attention to N.C. Gen. Stat. §§ 53-48, 53-104, 53-134, and 4 N.C.A.C. 3C.1001. A careful examination of these statutory provisions and administrative regulations reveals, however, that N.C. Gen. Stat. § 53-48 limits the overall size of loans to any single borrower, that N.C. Gen. Stat. § 53-104 subjects banks to regulation by the Commissioner of Banks, that N.C. Gen. Stat. § 53-134 makes certain violations of the banking laws misdemeanors, and that 4 N.C.A.C. 3C.1001 governs the manner in which appraisals of real property should be performed as part of the lending process. With the possible exception of 4 N.C.A.C. 3C.1001, none of the authorities upon which Plaintiffs rely in their brief appear to have any specific application to the claims that Plaintiffs have asserted against Defendant.

IN RE FIFTH THIRD BANK

[217 N.C. App. 199 (2011)]

from the contents of their brief, Plaintiffs base their claim that Defendant violated "the banking laws" upon:

> 1. Various defects in the procedures utilized to procure and in the substance of the appraisals performed on the lots that Plaintiffs purchased and which were used as collateral for the loans that they obtained from Defendant.

> 2. Defendant's failure to investigate the developers or to monitor the progress of development activities at the Village of Penland either prior to or after Plaintiffs obtained their loans from Defendant.

> 3. A close association between Defendant and the developers or their agents, or the alleged improper involvement of Defendant in the developers' plans to build the Village of Penland.

> 4. Defendant's failure to ensure that the persons involved in processing Plaintiffs' loan applications and appraising the lots were appropriately independent and properly qualified or certified.

> 5. Defendant's failure to "disclose" the existence of various alleged defects in its loan administration procedures and appraisals or information in its possession about the developers·or the Village of Penland project.

After carefully reviewing the record, we conclude that Plaintiffs have failed to demonstrate that the trial court should have denied Defendant's request for summary judgment with respect to their UDTPA claim based upon the evidence relating to these allegations.[4]

[4] As the principal basis for their claim against Defendant, Plaintiffs allege that, in a number of different respects, Defendant failed to ensure that the appraisals relating to the lots that Plaintiffs purchased using the proceeds of the loans obtained from Defendant were properly conducted. As we have discussed above, however, the undisputed evidence showed that these appraisals, which were procured by Defendant, had no impact on Plaintiffs' decision to invest in the Village of Penland. Instead, the record clearly establishes that Plaintiffs neither obtained their own appraisals nor saw the appraisals

---

4. The list of alleged violations of "the banking laws" discussed in the text is primarily based upon the information contained in expert witness depositions and affidavits that Plaintiffs submitted to the trial court in connection with the summary judgment hearing. The affiants who executed these affidavits criticized various practices and acts in which Defendant allegedly engaged on the grounds that they violated various federal banking regulations, industry practices, or internal bank policies.

obtained by Defendant until after closing the loans that they obtained from Defendant.[5] For that reason, we conclude that the record contains no evidence tending to show that Plaintiffs' decision to invest in the Village of Penland bore any relation to the appraised value of the lots which they purchased[6] or that Plaintiffs relied in any way upon the allegedly defective appraisals which Defendant procured when they decided to invest in the Village of Penland. Thus, given the complete absence of any evidence tending to show a causal connection between the allegedly defective appraisals and the injury that Plaintiffs claim to have suffered, we conclude that the allegedly defective appraisals do not support a finding of liability pursuant to N.C. Gen. Stat. § 75-1.1.[7]

[5] Plaintiffs also argue that there was an impermissibly close association between Defendant and the developers of the Village of Penland project. For example, Plaintiffs allege that Defendant "gave an air of legitimacy to the Penland development by virtue of its involvement in the developers' lot sales program" and that "it was

5. Plaintiffs emphasize the fact that the loans to investors in the Village of Penland represented an opportunity for Defendant to develop customer relationships with "high net worth individuals," note that Defendant decided to extend credit to Plaintiffs based on their overall net worth rather than the appraised value of the lots that Plaintiffs purchased, and assert that Defendant "never disclosed to [Plaintiffs] the Bank's true business motivations in handling the loans" or basis for making them. We are unable to see how a lender's decision to loan money to a high income individual in the hope of obtaining additional business from that person or to extend credit based upon a particular borrower's net worth rather than upon the value of the collateral, regardless of whether those "facts" were disclosed to the borrower, would constitute an unfair and deceptive trade practice for purposes of N.C. Gen. Stat. § 75-1.1

6. The fact that the purchase price that Plaintiffs paid for the lots in question was identical and bore no apparent relation to the actual value of the relevant lots in their undeveloped state may cut against, instead of in favor of, Plaintiffs' position. The fact that each lot was appraised and priced at the same value may suggest that the investments in question amounted to a securities transaction not subject to the UDTPA, *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985) (stating that "securities transactions are beyond the scope of" N.C. Gen. Stat. § 75-1.1), rather than a loan. *Ahmed v. Porter*, 2009 U.S. Dist. LEXIS 73650 (W.D.N.C. 2009), *adopted by, claim dismissed by*, 2009 U.S. Dist. LEXIS 98839 (W.D.N.C. 2009). Although we decline to resolve the issues raised by Plaintiffs' appeal on the basis of such logic, which was not addressed by any party, we observe that the uniform pricing and appraisals could conceivably support a determination that the transactions at issue in this case were not, in fact, subject to the UDTPA.

7. We note that Plaintiffs have not shown that the appraisals ordered by Defendant were performed in an effort to comply with a consumer protection statute or were undertaken for Plaintiffs' protection or benefit. In fact, Plaintiffs' expert witnesses conceded that the allegedly defective appraisals were performed for the purpose of protecting lending institutions, rather than consumers, from insolvency.

clear the Bank had an agreement or working relationship with the developers with respect to the Penland lot loans[.]" In support of these conclusory allegations, Plaintiffs assert that Defendant made loans to various individuals who invested in the Village of Penland; that an employee of Defendant had lunch with the developers on one occasion; that an employee of the developers coordinated the loan applications submitted on behalf of potential investors and forwarded them to Defendant; and that Defendant was responsive to requests by the developers for greater efficiency in processing investors' loan applications. None of these facts, if true, evidence an improper relationship between Defendant and the developers or establish that there was any sort of a principal/agent relationship between the developers and Defendant. In addition, Plaintiffs have cited no authority tending to show that Defendant had an obligation to protect potential investors, such as Plaintiffs, by investigating the *bona fides* of project developers like those involved in the Village of Penland. As a result, we conclude that Plaintiffs have failed to demonstrate that Defendant had inappropriate ties to the developers sufficient to constitute a violation of the UDTPA.

**[6]** The fact that Defendant loaned Plaintiffs money despite the involvement of an unlicensed loan coordinator employed by the developers for the purpose of preparing and presenting the necessary documentation and the fact that the appraiser who appraised the lots in question "was not one of the Bank's approved appraisers" is equally insufficient to establish the existence of a UDTPA violation. As we have already noted, the record contains no evidence tending to show that Plaintiffs knew the identity of the appraiser; the extent to which the appraiser or loan coordinator possessed the qualifications needed to do their jobs properly; and the extent, if any, to which the background and qualifications of these individuals played any role in Plaintiffs' decision to invest in the Village of Penland. As a result, we conclude that, even if Plaintiffs' loans were procured through and administered with the assistance of one or more persons who were not properly certified or qualified, that set of facts does not establish that Defendant engaged in an unfair and deceptive trade practice or that any causal connection existed between the involvement of these individuals in the process leading to the extension of credit to Plaintiffs and the injury that Plaintiffs claim to have suffered.

**[7]** Finally, Plaintiffs assert that Defendant violated the UDTPA by failing to investigate the developers, to monitor the progress of the development, to ensure that the appraisals were accurate, or to "dis-

close" allegedly unfavorable information concerning the developers, the appraisals, or the development to Plaintiffs. We conclude that these allegations, even if true, do not establish that Plaintiffs have a valid claim against Defendant pursuant to N.C. Gen. Stat. § 75-1.1. As we have repeatedly noted, the undisputed evidence tends to show that Plaintiffs' decision to invest in the Village of Penland did not rest on the appraised value of the unimproved land, precluding a conclusion that any deficiencies in the appraiser's performance or valuations resulted in any injury to Plaintiffs. In addition, Plaintiffs have cited no authority tending to establish that Defendant had a legal duty to investigate and monitor the activities of the developers and the progress of the development or to communicate to Plaintiffs the results of any such investigation or any other deficiencies associated with the Village of Penland. As a result, we conclude that, given the facts disclosed in the present record, Defendant's alleged failure to investigate or disclose does not constitute a UDTPA violation.

Thus, for the reasons set forth above, we conclude that:

> 1. Plaintiffs failed to forecast evidence that Defendant engaged in unlawful activities that constitute a per se violation of the UDTPA.

> 2. Plaintiffs failed to forecast evidence that Defendant's alleged violation of "the banking laws," general industry standards or its own internal policies caused any injury to Plaintiffs or contravened the UDTPA.

> 3. Plaintiffs failed to forecast evidence that Defendant violated any statute or regulation designed to protect consumers, or that it violated an "established public policy."

As a result, the trial court did not err by granting summary judgment in favor of Defendant with respect to Plaintiffs' unfair and deceptive trade practices claim.

## 2. Breach of Contract Claim

[8] Secondly, Plaintiffs argue that the trial court erred by granting summary judgment in favor of Defendant with respect to its breach of contract claims and that Defendant should be "equitably estopped" from enforcing the contract evidenced by the loan agreement and promissory note. We do not believe that Plaintiffs' contentions have merit.

In their brief, Plaintiffs contend that Defendant should be equitably estopped from enforcing its contracts with Plaintiffs "because

of its banking law violations and culpable failures to disclose." For the reasons discussed above, we conclude that these alleged "actions and omissions" do not operate to estop Defendant from seeking to enforce its contractual rights. Although Plaintiffs allude to the fact that contracts are not enforceable when "induced by the fraud of the other party," they are not entitled to resist Defendant's contractual claim on fraud-related grounds given that they dismissed their claims of fraud prior to the hearing on Defendant's summary judgment motion and have failed to adduce evidence tending to show that Defendant engaged in actionable fraud. Similarly, Plaintiffs' claim that Defendant "led the Borrowers to believe" that its loans to Plaintiffs "complied with all applicable laws, were consistent with the Bank's internal policies and procedures, and were true mortgage loans, rather than personal loans based solely upon [Plaintiffs'] net worth and creditworthiness" lacks any evidentiary support, given the absence of proof that Defendant "led [Plaintiffs] to believe" any of the asserted facts. As a result, this aspect of Plaintiffs' challenge to the trial court's order lacks merit.

### 3. Tortious Acting in Concert and Civil Conspiracy

**[9]** Next, Plaintiffs argue that the trial court erred by entering summary judgment in favor of Defendant with respect to their claims for tortious acting in concert and civil conspiracy. Once again, we conclude that Plaintiffs' argument lacks merit.

"The elements of civil conspiracy are: '(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme.'" *Strickland v. Hedrick*, 194 N.C. App. 1, 19, 669 S.E.2d 61, 72 (2008) (quoting *Privette v. University of North Carolina*, 96 N.C. App. 124, 139, 385 S.E.2d 185, 193 (1989)). In their brief, Plaintiffs assert that "the Bank's joint conduct with the developers in handling the Bank's loans in an unlawful manner resulted in the Borrowers' losses: the Bank did a lawful act (making the loans) in an unlawful way (in violation of the UDTPA)." As a result of the fact that we have already concluded that Defendant is not liable to Plaintiffs for engaging in unfair and deceptive trade practices, we reject Plaintiffs' claim that Defendant participated in a civil conspiracy to engage in such unlawful practices as well.

**[10]** Similarly, Plaintiffs' challenge to the trial court's decision to grant summary judgment in favor of Defendant with respect to their

**IN RE FIFTH THIRD BANK**

[217 N.C. App. 199 (2011)]

tortious acting in concert claim rests on a conclusory allegation that "the Bank and developers acted together in almost every phase of the handling of the Penland loans" and that a reasonable juror could therefore "infer joint action in concert on the part of the Bank and the developers." However, as we have discussed above, Plaintiffs have failed to produce any evidence of joint action between Defendant and the developers or that Defendant's involvement in the development activities associated with the Village of Penland extended beyond the point of merely making loans to investors such as the Plaintiffs. As a result, Plaintiffs' challenge to the trial court's decision to grant summary judgment in favor of Defendant with respect to this claim lacks merit as well.

### 4. Costs

[11] Finally, Plaintiffs argue that the trial court erred by taxing the amounts set forth in Defendant's verified bill of costs against them. The sole basis for this argument is that, "[s]ince the decision to grant summary judgment to the Bank constituted reversible error, the award of costs constitutes an abuse of discretion." In light of our determination that the trial court did not err by entering summary judgment in favor of Defendant, we reject Plaintiffs' challenge to the trial court's decision to tax costs to Plaintiffs as well.

### III. Conclusion

Thus, for the reasons set forth above, we conclude that the trial court did not err by granting summary judgment in favor of Defendant with respect to Plaintiffs' unfair and deceptive trade practices, tortious acting in concert, and civil conspiracy claims and Defendant's claim based on the promissory note executed in favor of Defendant or by taxing the costs against Plaintiffs. As a result, the trial court's orders should be, and hereby are, affirmed.

AFFIRMED.

Judges STEPHENS and BEASLEY concur.