IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-258

Filed 7 May 2025

Edgecombe County, No. 23CVS165-320

RONALD ARRINGTON, AVONDA ARRINGTON and RONITA ARRINGTON, Plaintiffs,

v.

MARVIN NELSON ARRINGTON, SR. and DELORIS DAVIS HAYES, Defendants.

Appeal by defendants from order entered 6 November 2023 by Judge Andrew Womble in Superior Court, Edgecombe County. Heard in the Court of Appeals 10 September 2024.

> *Howard Stallings Law Firm, by Douglas D. Noreen and Sheri M. Dickson, for plaintiffs-appellees.*
>
> *Couch & Associates, PC, by C.A. Couch, for defendants-appellants.*

STROUD, Judge.

Appeal by Marvin Nelson Arrington Sr. and Deloris Davis Hayes ("Defendants") from order entered 6 November 2023. On appeal, Defendants argue that the trial court erred in granting Ronald Arrington, Avonda Arrington, and Ronita Arrington's ("Plaintiffs") motion for attorney fees based on North Carolina General Statute Section 47B-6, which allows a prevailing party to recover costs and "a reasonable attorney's fee" for the intentional registration of a notice "for the purpose of asserting false or fictitious claims to real property[.]" N.C. Gen. Stat. §

47B-6 (2023). The trial court previously granted partial summary judgment in Plaintiffs' favor on some, but not all, of Plaintiffs' claims arising from Defendants' alleged registration of a false or fictitious claim to real property, so the Order granting attorney fees is an interlocutory order.

Defendants have appealed *only* the interlocutory Order granting attorney fees and have raised no argument regarding the substantive claims on which the partial summary judgment order against them was granted. Defendants have not demonstrated a substantial right which would be impaired without immediate appellate review of the Order granting attorney fees. Interlocutory review of the Order granting attorney fees would create the potential for a fragmentary appeal, since the legal basis of the award of attorney fees depends on the substantive claims. Defendants have not sought interlocutory review of the partial summary judgment order regarding those substantive claims and would have a right to appellate review once *all* claims have been finally resolved by the trial court. Therefore, the appeal is dismissed.

## I. Factual Background and Procedural History

On 27 February 2023, Plaintiffs filed a complaint against Defendants alleging many claims identified as follows:

Count One: "Request for Declaratory Relief to Invalidate Power of Attorney"

Count Two: "Violation of Terms of the Power of Attorney"

Count Three: "Breach of Fiduciary Duty Based on [Power of Attorney]"

Count Four: "Fraud"

Count Five: "Constructive Fraud"

Count Six: "Unjust Enrichment"[1]

Count Eight: "Action to Quiet Title"

Count Nine: "Punitive Damages"

Count Ten: "Undue Influence"

Count Eleven: "Intentional Interference with Inheritance[.]"

Finally, Plaintiffs sought to "recover from Defendants their attorney fees pursuant to N.C. Gen. Stat. §§ 6-21 and/or 47B-6[.]"

These claims arise from Marvin Arrington, Sr.'s ("Defendant Arrington") actions in fraudulently obtaining power of attorney from Nannie B. Arrington ("Decedent") who was eighty-eight years old and in hospice care. On the day Decedent died, 31 October 2019, Defendant Arrington obtained, and then immediately used, the power of attorney to deed Decedent's real property to himself. Under Decedent's will, Plaintiff Ronald Arrington would have inherited a life estate in the real property, and upon his death, the real property was to be sold and the proceeds of the sale distributed equally to Defendant Arrington; Plaintiff Avonda Venee Arrington; and Plaintiff Ronita Channel Arrington, or if one of them was deceased, to their children. On 31 January 2020, Defendant Arrington transferred the property to himself and

---

[1] We note that Plaintiffs' complaint *does not* contain a Count Seven, hence the omission from our list of claims.

his wife, Deloris Davis Hayes ("Defendant Hayes") and obtained an equity line of credit against the property in the amount of $60,000.00 on 30 March 2020.

On 6 June 2023, Plaintiffs filed a motion for summary judgment which came on for hearing 21 August 2023. As discussed above, by order entered 7 September 2023, the trial court granted Plaintiffs' motion for summary judgment "as to Counts One, Two, and Eight[,]" and denied Plaintiffs' motion for summary judgment "[a]s to Counts Four, Five, Six, Nine, Ten[,] and Eleven[.]" The trial court also decreed that "Plaintiffs' Motion for Attorneys' Fees is not ruled on at this time and may be reset for hearing by Plaintiff at a later date for determination."

The matter of attorney fees came on for hearing 6 November 2023, and on that same day, the trial court entered an Order for attorney fees and ordered Defendants pay $25,002.89 to Plaintiffs within ninety days. The Order for attorney fees *did not* address the remaining pending claims on which summary judgment was denied: Counts "Four, Five, Six, Nine, Ten[,] and Eleven[.]" Although the Order for attorney fees did not cite the basis of the attorney fee award, Plaintiffs' complaint requested attorney fees under North Carolina General Statute Sections 47B-6 and 6-21. North Carolina General Statute Section 47B-6, which prohibits registering a false claim, provides for an award of attorney fees to "the prevailing party:"

> No person shall use the privilege of registering notices
> hereunder for the purpose of asserting false or fictitious
> claims to real property; and in any action relating thereto
> if the court shall find that any person has intentionally
> registered a false or fictitious claim, the court may award

to the prevailing party all costs incurred by him in such
action, including a reasonable attorney's fee.

*Id.* Plaintiffs' motion for attorney fees also cited, in the alternative, North Carolina General Statute Section 6-21, which states that, "[c]osts in the following matters shall be taxed . . . in the discretion of the court" with costs defined to include "reasonable attorney fees in whatever amounts the court in its discretion determines and allows." N.C. Gen. Stat. § 6-21 (2023). However, the claims upon which the trial court granted summary judgment here do not include any of the types of claims listed in North Carolina General Statute Section 6-21. The trial court's award of attorney fees could be based only upon North Carolina General Statute Section 47B-6, and Defendants' arguments on appeal are also primarily based on North Carolina General Statute Section 47B-6. Defendants filed timely written notice of appeal of the Order for attorney fees; however, Defendants have not appealed the 7 September 2023 order granting partial summary judgment on Counts "One, Two, and Eight[.]"

## II. Appellate Jurisdiction

North Carolina General Statute Section 7A-27(b)(3)(a) provides that "appeal lies of right directly to the Court of Appeals . . . [f]rom any interlocutory order or judgment" that affects a "substantial right." N.C. Gen. Stat. § 7A-27(B)(3)(a). On appeal, Defendants argue that "the trial court erred in granting Plaintiffs' motion for summary judgment regarding attorneys' fees [because] it made no determination as to whether the fee was reasonable." Defendants also contend that the trial court

"made no finding of fact that either Defendant intentionally registered a false or fictitious claim so therefore attorney fees could not have been awarded under [North Carolina General Statute Section 47B-6]."

Neither the partial summary judgment order nor the Order awarding attorney fees resolved all pending claims; therefore, the Order on appeal is interlocutory. *See Veazey v. City of Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950) ("An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." (citation omitted)). Defendants contend that they have a "substantial right" justifying an interlocutory appeal of the Order because "Defendants are ordered to make immediate payment of a significant amount of money." Defendants then cite to several cases to support their claim that an order requiring the "immediate payment of a significant amount of money" constitutes a "substantial right" to allow for appellate review of this interlocutory Order.[2] Despite Defendants' long list of cited cases, the fact that an order requires the "immediate payment of a significant amount of money" does not, *without more*, give this Court

_____

[2] Defendants cite to: *Wachovia Realty Invs. v. Hous., Inc.*, 292 N.C. 93, 232 S.E.2d 667 (1977); *Beck v. Am. Bankers Life Assurance Co.*, 36 N.C. App. 218, 243 S.E.2d 414 (1978); *Atkins v. Mitchell*, 91 N.C. App. 730, 373 S.E.2d 152 (1988); *Estate of Redden ex rel. Morley v. Redden*, 179 N.C. App. 113, 632 S.E.2d 794 (2006); *In re Fifth Third Bank, Nat'l Ass'n-Vill. of Penland Litig.*, 217 N.C. App. 199, 719 S.E.2d 171 (2011); *Beasley v. Beasley*, 259 N.C. App. 735, 816 S.E.2d 866 (2018); *Porters Neck Ltd. v. Porters Neck Country Club, Inc.*, 276 N.C. App. 95, 855 S.E.2d 819 (2021), to support their contention that the "immediate payment of a significant amount of money" entitles them to appellate review of the interlocutory Order.

jurisdiction to consider an interlocutory appeal. Defendants do not explain how the cases cited in support of their claim of a "substantial right" apply to this appeal other than to contend that the fees awarded were a "significant amount of money" which they were to pay "immediately."

In actuality, the cases cited do not support Defendants' claim of a substantial right. The phrase "immediate payment of a significant amount of money" is *used* in eight reported cases from this Court, including four of the cases cited by Defendants,[3] but context is crucial in the analysis of whether an interlocutory order affects a substantial right. We will briefly address why *none* of the cases cited by Defendants support their claim of a substantial right.

In *Estate of Redden v. Redden*, the defendant appealed a partial summary judgment order that disposed of a conversion claim regarding ownership of a bank account—while *also* ordering the defendant to pay the plaintiff $150,000.00 plus costs; this Court affirmed summary judgment on the conversion claim but remanded on the issue of damages for conversion. 179 N.C. App. 113, 119-20, 632 S.E.2d 794, 799 (2006).

In *Beck v. American Bankers Life Assurance Company*, the defendant appealed a "somewhat ambiguous" partial summary judgment order for the plaintiff in a

---

[3] The cases cited by Defendants that use the *exact* language "immediate payment of a significant amount of money" are *Redden*, 179 N.C. App. at 117, 632 S.E.2d at 798; *Fifth Third Bank*, 217 N.C. App. at 205, 719 S.E.2d at 175; *Beasley*, 259 N.C. App. at 742, 816 S.E.2d at 873; and *Porters Neck*, 276 N.C. App. at 99, 855 S.E.2d at 824.

wrongful termination claim. 36 N.C. App. 218, 220, 243 S.E.2d 414, 416 (1978). There, the summary judgment order required "immediate payment to [the] plaintiff of a substantial sum of money, the exact amount of which the parties were directed to determine;" a later "supersedeas bond filed by [the] defendant" recited that "the amount of commissions has now been determined as $21,500.73." *Id.* This Court determined that the language of the partial summary judgment order plus the bond would be treated as "a final judgment that [the] plaintiff [wa]s presently entitled to recover of [the] defendant the sum of $21,500.73" which this Court stated was "presently appealable." *Id.* at 221, 243 S.E.2d at 416. This Court then reversed and remanded based on a genuine issue of material fact as to the amount of commissions owed. *Id.* at 221, 243 S.E.2d at 417.

In *Atkins v. Mitchell*, one of three defendants appealed from a partial summary judgment against the defendant for $1,054,916.80, with "claims against the other two defendants [ ] still pending, awaiting the outcome of th[e] appeal." 91 N.C. App. 730, 731, 373 S.E.2d 152, 153 (1988). This Court held that the defendant had demonstrated a substantial right based on two cases: "*Wachovia Realty Investments v. Housing, Inc.*, 292 N.C. 93, 232 S.E.2d 667 (1977); [and] *Equitable Leasing Corp. v. Myers*, 46 N.C. App. 162, 265 S.E.2d 240, *appeal dismissed*, 301 N.C. 92, __ S.E.2d. __ (1980)." *Id.* at 731-32, 373 S.E.2d at 153. Since the *Atkins* court did not further explain its ruling beyond citing these two cases, we note that the ruling in *Equitable Leasing* was specifically based on *Wachovia Realty*. *See Equitable Leasing Corp.,* 46

N.C. App. at 172, 265 S.E.2d at 247 ("In the case *sub judice*, however, we believe we are bound by [*Wachovia Realty*] *Investments* to hold that the trial court's entry of summary judgment for a monetary sum against [the] defendant [ ] affects a 'substantial right' of th[e] defendant.").

In the case relied on by both *Atkins* and *Equitable Leasing*, *Wachovia Realty*, our Supreme Court held that the defendant demonstrated a substantial right supporting appellate review of an interlocutory order because "[s]upplemental proceedings in execution ha[d] been instituted and an order ha[d] been entered by the Clerk of the Superior Court declaring the judgment a lien upon funds alleged to be ow[ed] to [the defendant], from the Housing Authority of the City of Winston-Salem." *Wachovia Realty Invs.*, 292 N.C. at 99, 232 S.E.2d at 671. The Court reversed partial summary judgment where the trial court "was clearly in error in rendering summary judgment for a specified amount, the alleged unpaid balance due upon the note, while retaining for hearing and determination the claim of [the defendant] that it [wa]s entitled to a set-off or credit in approximately the same amount." *Id.* at 98-99, 232 S.E.2d at 671.

In *In re Fifth Third Bank, National Association – Village of Penland Litigation*, the plaintiffs were several investors who had obtained loans from the defendant Bank to invest in "a real estate development known as the Village of Penland." 217 N.C. App. 199, 202, 719 S.E.2d 171, 173 (2011). They "filed a complaint against [the

defendant Bank] and others" arising from the real estate development.[4]  *Id.* at 203, 719 S.E.2d at 174.  The developers failed to use the plaintiffs' funds to develop the Village of Penland and "several individuals associated with the developers entered pleas of guilty to various federal criminal offenses arising from project-related activities."  *Id.* at 202, 719 S.E.2d at 174.  The development failed, the plaintiff investors "defaulted on their loan payments" to the defendant Bank, and the case on appeal arose "from a dispute between the parties over the extent to which [the p]laintiffs are obligated to repay the loans that they obtained from [the d]efendant [Bank]." *Id.*

The plaintiffs appealed an order granting partial summary judgment that awarded the defendant Bank "the principal amount due under the promissory note plus interest, attorney's fees, and the costs." *Id.* at 204, 719 S.E.2d at 175.  Although they initially brought fourteen claims against the defendant Bank, the plaintiffs later dismissed all but two claims and the trial court dismissed those claims and entered judgment against the plaintiffs for the principal amount due under the promissory notes, plus interest, costs, and attorney fees. *Id.*  The plaintiffs appealed, and after considering the substantive claims dismissed, this Court affirmed the partial summary judgment order on all claims, including the plaintiffs' substantive claims against the defendant Bank *and* the defendant Bank's counterclaim on the

---

[4] The opinion does not identify the other defendants.

promissory note.  *Id.* at 215, 719 S.E.2d at 181.

In *Beasley v. Beasley*, the plaintiff appealed from an attorney fee order based on claims for child custody, child support, and postseparation support; one judge, with one judge concurring in result only, determined a substantial right was shown because the "order for attorney's fees [ ] completely dispose[d] of that issue as it relate[d] to other substantive claims;" the third judge dissented.  259 N.C. App. 735, 741, 816 S.E.2d 866, 872 (2018).  The rationale in *Beasley* extensively discussed North Carolina General Statute Section 50-19.1, which authorizes interlocutory appeals of orders resolving certain claims in domestic cases, and this statute's interaction with the "substantial right" doctrine.  *See id.* ("Notably, neither *Duncan* nor *Comstock* (nor any other case) has interpreted [North Carolina General Statute Section] 50-19.1 through the particular factual lens facing us in the instant appeal.").

In *Porters Neck Limited. v. Porters Neck Country Club, Inc.*, the defendant appealed an interlocutory order awarding sanctions under North Carolina Rules of Civil Procedure 11 and 37.  276 N.C. App. 95, 855 S.E.2d 819 (2021).  This Court noted that the order required the "immediate payment of a significant amount of money" because the order required the defendant "to immediately pay attorneys fees as sanctions to [the p]laintiff totaling in excess of $48,000."  *Id.* at 99, 855 S.E.2d at 824-25.  This Court also noted that "[t]he reason for the rule against interlocutory appeals seeks to prevent fragmentary, premature and unnecessary appeals by allowing the trial court to bring a case to final judgment before its presentation to the

appellate courts." *Id.* at 99, 855 S.E.2d at 824 (internal quotation marks, brackets, and citation omitted). We note that in *Porters Neck*, the discovery sanction issues were based on Rules 11 and 37 of the Rules of Civil Procedure and were entirely independent of the substantive issues arising from the claims in the case involving "breach of contract, unfair and deceptive trade practices, and tortious interference with contract," and "an accounting, an injunction against continued breach, and [ ] punitive damages[.]" *Id.* at 97, 855 S.E.2d at 823. Thus, considering the interlocutory appeal of the sanctions order would not create a fragmentary appeal where the substantive claims were not the basis for the attorney fee order.

All these cases cited by Defendants involve interlocutory appeals of a ruling on a substantive claim with an award of money damages and in some instances the award included some attorney fees. Defendants have not cited any case where the order on appeal was solely an order for attorney fees based *specifically* on a statute which allows an award of attorney fees based on the prevailing party's success on a particular substantive claim and the appellant appealed only the attorney fee award without raising any argument about the substantive claim, but that is the situation presented by this case. One case, *Porters Neck*, addressed an attorney fee award independent of the substantive claims pending in the action, since that award was a sanction based on Rules 11 and 37. *Id.* However, as noted above, in *Porters Neck* there was no risk of a fragmentary appeal. *See id.* In other words, this Court's ruling

on the sanctions issue in *Porters Neck* would not affect any subsequent appeal of the trial court's later rulings on the substantive claims.

Although Defendants did not cite it—most likely because it was reversed in part and vacated in part by our Supreme Court—one of the cases in which this Court used the phrase "immediate payment of a significant amount of money" was *Wing v. Goldman Sachs Trustee Company, N.A.*, 274 N.C. App. 144, 150, 851 S.E.2d 398, 402 (2020), *rev'd in part, vacated in part,* 382 N.C. 288, 876 S.E.2d 390 (2022) (*Wing I*).[5] But our Supreme Court's opinion in *Wing* (*Wing II*) provides excellent guidance in analysis of this interlocutory appeal issue. *See Wing v. Goldman Sachs Trustee Company, N.A.*, 382 N.C. 288, 876 S.E.2d 390 (2022).

In *Wing II*, our Supreme Court addressed the substantive issue of the "extent of a trustee's duties and powers concerning litigation challenging trust amendments." *Id.* at 289, 876 S.E.2d at 393. There, the interlocutory order in question was an order requiring Goldman Sachs, trustee of the trust in dispute in the case, to "make distributions to [the defendant trust beneficiaries] for payment for legal fees incurred by them in the above-captioned cases with respect to their defense of this matter." *Id.* at 291-92, 876 S.E.2d at 394.

---

[5] In *Wing I*, this Court used the phrase "immediate payment of a significant amount of money" in a block quote that cited *Beasley*, 259 N.C. App. at 742, 816 S.E.2d at 872-73, which was *also* cited in Defendants' brief. *See Wing I*, 274 N.C. App. at 149, 851 S.E.2d at 401-02 (citing *Beasley*).

In *Wing I*, the Court of Appeals had determined that there was a substantial right justifying an interlocutory appeal and noted that one of the factors justifying an immediate appeal was the "significant amount" of money involved:

> As this Court stated in *Beasley*, [the defendant] has paid out far more than an 'insignificant amount' in Trust funds for Sellers' and Cone's legal fees. The disbursements for legal fees and expenses already surpass $2 million dollars, more than forty times the amount this Court referenced in *Beasley* as 'a not insignificant amount.'

*Wing I*, 274 N.C. App at 149, 851 S.E.2d at 402 (citation omitted).

The Supreme Court granted discretionary review of this Court's opinion in *Wing I* and agreed with this Court's result in allowing the interlocutory appeal but expanded upon the rationale. The Supreme Court explained how to analyze the "substantial right" issue, but notably did not focus on the amount of money involved. Instead, the Court focused on the substantive effects of the "pay order" requiring the trustee to make certain payments:

> The substantial right test for appealability of interlocutory orders is that the right itself must be substantial and the deprivation of that right must potentially work injury if not corrected before appeal from final judgment. If [the] appellant's rights would be fully and adequately protected by an exception to the order that could then be assigned as error on appeal after final judgment, there is no right to an immediate appeal.
>
> An assessment of whether an order impacts a substantial right often requires considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered. It is the appellant's burden to present appropriate grounds for acceptance of an

interlocutory appeal, and not the duty of this Court to construct arguments for or find support for [the] appellant's right to appeal.

*Wing II*, 382 N.C. at 293-94, 876 S.E.2d at 395-96 (citation and quotation marks omitted).

*Wing II* involved a complex case arising from complaints alleging that the plaintiffs' father, decedent Ralph L. Falls Jr., had "lacked the capacity to amend [his Revocable Declaration of] Trust and that [the defendant trust beneficiaries] had 'unduly influenced decedent.'" *Id.* at 290, 876 S.E.2d at 394. The plaintiffs also brought claims against the trustee, Goldman Sachs, regarding distributions to the defendant trust beneficiaries, "which they claim were invalid given that there were pending judicial proceedings challenging the Trust amendments' validity." *Id.*

However, the trial court's ruling on appeal was not simply an award of attorney fees; the order on appeal also granted the defendants' motions to pay fees from the trust and ordered that:

> [The d]efendant Goldman Sachs, as Trustee of the Revocable Trust . . . *shall*, in the proper exercise of its business judgment, make distributions to [the defendant trust beneficiaries] for payment for legal fees incurred by them in the above-captioned cases with respect to their defense of this matter. This Order is without prejudice to any party's *other* remaining claims and defenses in these matters. (Emphases in original). Notably, the trial court employed the word 'shall' and did not explicitly indicate that the order was without prejudice to Wing's claim for wrongful distribution against [the defendant] Goldman Sachs.

*Id.* at 295, 876 S.E.2d at 396 (emphases in original).

The Supreme Court observed that:

> Given this procedural context and record, the Pay Order does not purport to simply allow [the defendant] Goldman Sachs to pay costs from the Trust as [the] defendant beneficiaries contend. Rather, the record supports the Court of Appeals' conclusion that the order affirmatively order[s] payments by a trustee with distributions from a trust to some purported beneficiaries, and not others, when the rightful beneficiaries are disputed, . . . and [i]f Wing prevails on her claims of wrongful distribution [against Goldman Sachs], no return of funds or credit to offset future payments is guaranteed[.]

*Id.* at 295, 876 S.E.2d at 396-97 (citation and quotation marks omitted).

In turn, the Supreme Court determined that there was a substantial right justifying an interlocutory appeal. In addition to the possibility that the plaintiffs may be *unable* to recover any funds wrongfully paid from the trust "even if they successfully established themselves as the rightful beneficiaries under the Trust," the Court also noted the importance of the need for the trustee to have clear guidance on how to administer the trust during the pending litigation:

> Moreover, it is also important to ensure that persons serving as trustees be able to obtain definitive instructions concerning the manner in which a trust should be administered. Thus, in this case, the right to collect from [the defendant] Goldman Sachs, as trustee, for the distributions during a pending judicial proceeding contesting the validity of the trust during that time period might be lost absent an appeal before final judgment of the Pay Order.

*Id.* at 296-97, 876 S.E.2d at 397. Our Supreme Court ultimately concluded that "for

all of these reasons, we are convinced that, absent an appeal before final judgment, a substantial right of [the] plaintiffs will potentially be impaired in the absence of an immediate appeal from the pay order." *Id.* at 297, 876 S.E.2d at 398.

This case is entirely unlike *Wing*. Here, Defendants have appealed *only* the attorney fee award; they did not even attempt an interlocutory appeal of the partial summary judgment order, nor its substantive rulings on the claims on which the attorney fee award was based. If we were to review the Order awarding attorney fees, we must assume the trial court's ruling on some of the underlying claims in the partial summary judgment order was correct, and thus Plaintiffs were entitled to recover attorney fees under North Carolina General Statute Section 47B-6, as the trial court ordered.

But there are other substantive claims still pending, and after the trial court disposes of all claims, both Plaintiffs and Defendants would then have a right to appeal as to any claims on which they did not prevail. Our consideration of the attorney fee issue now would create the potential for a fragmentary appeal, since after resolution of all substantive claims, either party could appeal and this Court might find legal error as to one or more of the substantive claims supporting the attorney fee award. Here, the attorney fee award depends on Plaintiffs' success on at least some of the substantive claims. Defendants have appealed only the Order awarding attorney fees, and they argue only that the trial court did not make all the findings of fact required for the award of attorney fees under North Carolina General

Statute Section 47B-6.

Defendants have not yet challenged the trial court's rulings on the substantive claims in the partial summary judgment order. Defendants' interlocutory appeal is premature and would create potential for a fragmentary appeal. Again, the *only* factor Defendants note to assert a substantial right is the "significant amount of money" of fees awarded. Even if we assume the amount of fees ordered is a "significant amount of money" to Defendants, this factor alone does not establish deprivation of a "substantial right" which, in accordance with our Supreme Court's holding in *Wing II*, "must potentially work injury if not corrected before appeal from final judgment." *Id.* at 293, 876 S.E.2d at 395. Here, Defendants' "rights would be fully and adequately protected by an exception to the [O]der that could then be assigned as error on appeal after final judgment," therefore, "there is no right to an immediate appeal." *Id.*

Upon appeal after a final judgment, Defendants may assign as error the Order awarding attorney fees, and their rights can be "fully and adequately protected" in that appeal. If Defendants prevailed on a later appeal, Plaintiffs could be ordered to repay any attorney fees awarded in error in the interlocutory order. Defendants have failed to demonstrate deprivation of a substantial right which "must potentially work injury if not corrected before appeal from final judgment." *Id.* We must therefore dismiss Defendants' interlocutory appeal.

### III. Conclusion

As we do not have jurisdiction to consider Defendants' interlocutory appeal, it is dismissed.

DISMISSED.

Judges HAMPSON and GORE concur.